1  KEKER, VAN NEST & PETERS LLP
   MICHELLE YBARRA - # 260697
2  mybarra@keker.com
   TRAVIS SILVA - # 295856
3  tsilva@keker.com
   ROBYN PARISER - # 335017
4  rpariser@keker.com
   633 Battery Street
5  San Francisco, CA 94111-1809
   Telephone:    415 391 5400
6  Facsimile:    415 397 7188

7  Attorneys for Petitioner SPINX GAMES, LTD.

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                     SAN FRANCISCO DIVISION

11 SPINX GAMES, LTD.                          Case No. 4:23-mc-80057-DMR

12          Petitioner,                       **DECLARATION OF TRAVIS SILVA IN
                                              SUPPORT OF MEMORANDUM OF**
13     v.                                     **POINTS AND AUTHORITIES IN
                                              SUPPORT OF PETITIONER SPINX'S**
14 THOMAS VIEL,                               **PETITION TO COMPEL ARBITRATION
                                              IN SAN FRANCISCO, CALIFORNIA**
15          Respondent.

16

17                                            Date Filed:    March 8, 2023

18

19

20

21

22

23

24

25

26

27

28

I, Travis Silva, declare and say that:

1.      I am an attorney licensed to practice law in the State of California.  I am a partner with the law firm of Keker, Van Nest & Peters LLP, and am counsel for Petitioner SpinX Games, Ltd. ("SpinX") in the above-captioned action.  I have personal knowledge of the facts set forth herein, and if called upon as a witness thereto, could do so competently under oath.

2.      A true and correct copy of Respondent Thomas Viel's ("Respondent") Demand for Arbitration with the American Arbitration Association ("AAA"), dated December 16, 2022, is attached hereto as **Exhibit A**.

3.      A true and correct copy of SpinX's email correspondence to the AAA and Respondent, dated January 12, 2023, is attached hereto as **Exhibit B**.

4.      A true and correct copy of Respondent's email correspondence to the AAA and SpinX, dated January 17, 2023, is attached hereto as **Exhibit C**.

5.      A true and correct copy of SpinX's email correspondence to the AAA and Respondent, dated January 27, 2023, is attached hereto as **Exhibit D**.

6.      A true and correct copy of the AAA's email correspondence to SpinX, dated January 29, 2023, is attached hereto as **Exhibit E**.

7.      A true and correct copy of the AAA's email correspondence to SpinX, dated February 13, 2023, is attached hereto as **Exhibit F**.

8.      Email correspondence between myself and John Norris, counsel for Respondent, dated between February 10, 2023, through March 6, 2023, is attached hereto as **Exhibit G**.

9.      SpinX has paid the fees that it owes to the AAA to open this matter, but it has not waived the Arbitration-Venue Provision.  A true and correct copy of the AAA payment confirmation in this matter is attached hereto as **Exhibit H**.

I declare under penalty of perjury that the foregoing is true and correct under the laws of the state of California.  Executed this 9th day of March, 2023 at San Francisco, California.

*/s/ Travis Silva*
TRAVIS SILVA

1

# Exhibit A



**AMERICAN ARBITRATION ASSOCIATION®**

**DEMAND FOR ARBITRATION
CONSUMER ARBITRATION RULES**

Complete this form to start arbitration under an arbitration agreement in a contract.

| |
|---|
| 1. Which party is sending in the filing documents? *(check one)* ☑ Consumer ☐ Business |
| 2. Briefly explain the dispute:<br><br>SEE ATTACHED |
| 3. Specify the amount of money in dispute, if any: $ SEE ATTACHED |
| 4. State any other relief you are seeking:<br><br>☐ Attorney Fees ☐ Interest ☐ Arbitration Costs ☑ Other; explain: SEE ATTACHED |
| 5. Identify the requested city and state for the hearing if an in-person hearing is held:<br>City: Oxford                                        State: Massachusetts |
| 6. Please provide contact information for both the Consumer and the Business. Attach additional sheets or forms as needed. |

**Consumer:**

| | | |
|---|---|---|
| Name:  Thomas Viel | | |
| Address:  98 Old Webster Rd. | | |
| City:  Oxford | State:  Massachusetts | Zip Code:  01540 |
| Telephone:  (310) 355-5526 | Fax: | |
| Email Address:  thomasmadera406@gmail.com | | |

**Consumer's Representative (if known):**

| | | |
|---|---|---|
| Name:  Andrew Wheeler-Berliner | | |
| Firm:  Davis Norris, LLP | | |
| Address:  2154 Highland Avenue | | |
| City:  Birmingham | State:  Alabama | Zip Code:  35205 |
| Telephone:  (205) 930-9900 | Fax: | |
| Email Address:  andrew@davisnorris.com | | |

**Business:**

| | | |
|---|---|---|
| Name:  SpinX Games Ltd. | | |
| Address:  2021 Fillmore St. #93 | | |
| City:  San Francisco | State:  California | Zip Code:  94115 |
| Telephone: | Fax: | |
| Email Address: | | |

 AMERICAN ARBITRATION ASSOCIATION®

**DEMAND FOR ARBITRATION
CONSUMER ARBITRATION RULES**

| Business' Representative (if known): | | |
|---|---|---|
| Name: | | |
| Firm: | | |
| Address: | | |
| City: | State: Select... | Zip Code: |
| Telephone: | Fax: | |
| Email Address: | | |
| Date:  December 16, 2022 | | |

**7. Send a copy of this completed form to the AAA together with:**

- A clear, legible copy of the contract containing the parties' agreement to arbitrate disputes;
- The proper filing fee (filing fee information can be found in the Costs of Arbitration section of the Consumer Arbitration Rules); and
- A copy of the court order, if arbitration is court-ordered.

**8. Send a copy of the completed form and any attachments to all parties and retain a copy of the form for your records.**

To file by mail, send the initial filing documents and the filing fee to: AAA Case Filing Services, 1101 Laurel Oak Road, Suite 100, Voorhees, NJ 08043.

To file online, visit **www.adr.org** and click on **File or Access Your Case** and follow directions. To avoid the creation of duplicate filings, the AAA requests that the filing documents and payment be submitted together. When filing electronically, no hard copies are required.

---

Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. If you believe that you meet these requirements, you must submit a completed Affidavit for Waiver of Fees, available on our website.

Pursuant to New Jersey Statutes § 2A:23B-1 et seq, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the New Jersey Arbitration Act, and to all consumer arbitrations conducted in New Jersey. If you believe that you meet these requirements, you must submit a completed Affidavit for Waiver of Fees, available on our website.

**BEFORE THE AMERICAN ARBITRATION ASSOCIATION**

| | |
|---|---|
| **THOMAS VIEL,** | ) |
| | ) |
| **Claimant,** | ) |
| | ) |
| v. | ) |
| | ) |
| **SPINX GAMES LTD.,** | ) |
| | ) |
| **Respondent.** | ) |

**DEMAND FOR ARBITRATION**

1.      Thomas Viel is an adult resident citizen of Worcester County, Massachusetts.

2.      Respondent SpinX Games Ltd. (Spin X) is a developer of cell phone applications that simulate casino games, including slot machines. These applications include Cash Frenzy, Jackpot World, and Cash Bash Casino

3.      Mr. Viel downloaded one or more of these applications which was created and marketed by the respondent (SpinX).

4.      Respondent's apps are free to download from the Apple App Store and Google Play Store. The apps contain games that operate exactly as casino slot machines do. Each game features a grid of multiple simulated reels that spin, and the consumer wins or loses based on the alignment of symbols on the reels, just as they would on a physical slot machine.

5.      The "winning" and "losing" in the apps is typically done with "coins." When a consumer such as Mr. Viel initially downloads the app, he or she receives a number of these coins for free. The consumer can play for free until losing this initial allotment of coins.

6.      Mr. Viel played through the initial allotment and then began buying coins sold through the apps. These coins' sole purpose is to be used to play the slot machines in Respondent's apps.

7.      When he ran out of coins, Mr. Viel was forced to either stop playing the games or spend actual money to purchase more coins. On numerous occasions, Mr. Viel purchased additional coins to be able to keep playing. Within the statute of limitations, Mr. Viel spent hundreds or thousands of dollars to play SpinX games.

8.      The slot machine games within SpinX's apps are illegal in the state of Massachusetts. Any game of chance, such as a slot machine, that awards players money or any other thing of value based on chance outcomes is prohibited. M.G.L.A. § 271 5A; M.G.L.A. 140 § 177(2); M.G.L.A. 23 K § 2.

9.      The games offered in SpinX's apps constitute illegal slot machines, under Massachusetts law:

> a mechanical, electrical, or other device, contrivance or machine, which, upon insertion of a coin, token, or similar object therein, or content of any consideration whatsoever, is available to play or operate, the play or operation of which, whether by reason of the skill of the operator or application of the element of chance, or both, may deliver or entitle the individual playing or operating the machine to receive cash, or tokens to be exchanged for cash, or

receive merchandise or **any other thing of value**, whether the payoff is made automatically from the machine or in any other manner…

M.G.L.A. 23K § 2.

10.   Free plays are considered a thing of value under Massachusetts law. Commenwealth v Rivers, 323 Mass. 379, 82 N.E. 2d 216 (1948); United States v Two Hollycrane Slot Machines, 136 F.Supp. 500 (U.S. Dist. Ct. Mass. 1955). The award of in-app credits allowing for continued play on the SpinX apps violates Massachusetts' laws prohibiting gambling and slot machines.

11.   SpinX, by distributing and operating these illegal slot machine apps, apps, violates M.G.L.A 271 § 5A, which prohibits the sale and maintenance of gambling devices.

12.   Under M.G.L.A. 137 § 1 § 3763.02, a person who loses money or other thing of value gambling on slot machines may recover their losses through a civil action:

> Whoever, by playing at cards, dice or other game, or by betting on the sides or hands of those gaming, except for gaming conducted in licensed gaming establishments pursuant to chapter 23K, loses to a person so playing or betting money or goods, and pays or delivers the same or any part thereof to the winner, or whoever pays or delivers money or other ting of value to another person for or in consideration of a lottery, policy or pool ticket, certificate, check or slip, or for or in consideration of a chance of drawing or obtaining any money, prize or other ting of value in a lottery or policy game, pool or combination, or other bet, may recover such money or the value of such goods in contract; and if does not within three months after such loss payment or

deliver, without covin or collusion, prosecute such action with effect, any other person may sue for and recover in tort treble the value thereof. M.G.L.A. 137 § 1.

11.     Pursuant to this section, Claimant Thomas Viel seeks recovery of the amount he personally lost to SpinX and treble the value of all other money collected by SpinX from Massachusetts residents in accordance with M.G.L.A. 137 § 1.

/s/Andrew Wheeler-Berliner
Andrew Wheeler-Berliner
Davis Norris, LLP

# Exhibit B

| | |
|---|---|
| **From:** | Travis Silva |
| **To:** | consumerfiling@adr.org |
| **Cc:** | andrew@davisnorris.com; ldroubi@blhny.com; jnorris@davisnorris.com; Ajay Krishnan |
| **Subject:** | Correspondence re Bennefield v. SpinX, AAA Ref. No. 01-22-0005-2594; King v. SpinX, AAA Ref. No. 01-22-005-2897; Pyles v. SpinX, AAA Ref. No. 01-22-005-2591; Ross v. SpinX, AAA Ref. No. 01-22-0005-2143; Viel v. SpinX, AAA Ref. No. 01-22-005-2748 |
| **Date:** | Thursday, January 12, 2023 11:28:13 AM |
| **Attachments:** | 2023 01 12 Letter to AAA from T Silva.pdf |

Dear AAA Consumer Filing office,

Please find enclosed correspondence relating to Bennefield v. SpinX, AAA Ref. No. 01-22-0005-2594; King v. SpinX, AAA Ref. No. 01-22-005-2897; Pyles v. SpinX, AAA Ref. No. 01-22-005-2591; Ross v. SpinX, AAA Ref. No. 01-22-0005-2143; Viel v. SpinX, AAA Ref. No. 01-22-005-2748.

Travis Silva

---

**Travis Silva** (he/him/his)
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
415 962 8819 direct | 415 391 5400 main
tsilva@keker.com | vcard | keker.com



Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809

415 391 5400
keker.com


**Travis Silva**
(415) 962 8819
tsilva@keker.com

January 12, 2023


American Arbitration Association
1101 Laurel Oak Rd.
Voorhees, NJ 08043

Re:   *Bennefield v. SpinX Games Ltd.*, AAA Ref. No. 01-22-0005-2594
      *King v. SpinX Games Ltd.*, AAA Ref. No. 01-22-005-2897
      *Pyles v. SpinX Games Ltd.*, AAA Ref. No. 01-22-005-2591
      *Ross v. SpinX Games Ltd.*, AAA Ref. No. 01-22-0005-2143
      *Viel v. SpinX Games Ltd.*, AAA Ref. No. 01-22-005-2748

Dear AAA:

SpinX Games Ltd. ("SpinX") is in receipt of the above-referenced arbitration demands (collectively, the "Arbitrations") and related correspondence regarding filing deficiencies.  I am counsel for SpinX and write regarding the location of the Arbitrations.  SpinX also requests that the AAA apply its Commercial Arbitration Rules to the Arbitrations and for arbitration selection to occur via a strike list.

1. Arbitration Location

The parties' arbitration agreement ("the Agreement")[1] allows SpinX to designate San Francisco, California, as the location of the arbitration hearing, and SpinX hereby invokes that location-selection provision so that San Francisco is the seat of the Arbitrations.  The Agreement provides that SpinX or its users may demand arbitration "in either San Francisco, California or the federal judicial district that includes the address you [i.e., a claimant] provide in your written notification of Pre-Arbitration Claim Resolution."  Agreement § 18(f).  The Agreement also provides that "[i]n the event that [a claimant] select[s]" as the location of the arbitration "the federal judicial district that includes the address you provide in your written notification of Pre-Arbitration Claim Resolution, [SpinX] may ***transfer the arbitration to San Francisco, California*** in the event that it agrees to pay any additional fees or costs you incur as a result of the transfer, as determined by the arbitrator."  *Id.* (emphasis added).

<u>SpinX hereby notifies the AAA and Claimants that it elects to transfer the Arbitrations to San Francisco, California pursuant to section 18(f) of the Agreement.</u>  SpinX agrees to incur any

---

[1] The AAA's rules required Claimants to include the Agreement with their initial demand. Claimants failed to do so.  SpinX encloses the Agreement herewith.

American Arbitration Association
January 12, 2023
Page 2

additional fees or costs Claimants will incur as a result of the transfer, as determined by the arbitrator(s).

2. Application of AAA's Commercial Arbitration Rules

In addition, SpinX also requests that the AAA designate the AAA Commercial Arbitration Rules to govern the Arbitrations.  The AAA may select the appropriate set of rules for the Arbitrations.  *See* AAA Comm. Arb. R. R-1 ("Any disputes regarding which AAA rules shall apply shall be decided by the AAA."); AAA Consumer Arb. R. R-1(e) ("The AAA has the initial authority to apply or not to apply the *Consumer Arbitration Rules*.").  The Commercial Rules are more appropriate here.  Although the Agreement specifies that the "arbitration shall be commenced as an individual arbitration," Agreement § 18(f), collectively Claimants appear to seek to recover damages in the amount of all money that residents of Georgia, New Jersey, and Ohio have paid to SpinX during the relevant time periods (which is several years, varying by state) and treble the amount of all money that residents of Kentucky and Massachusetts have paid to SpinX during the relevant time periods (also measured in years).  SpinX denies that Claimants may proceed with their action as pleaded and denies that such (or any) relief is available.  However, based on the relief requested in Claimants' demands, it is clear that Claimants will not limit themselves to raising solely individual claims, as the AAA's Consumer Arbitration Rules contemplate, meaning that use of the Consumer Arbitration Rules should not be favored.

Furthermore, the Agreement contains a waiver of the types of actions Claimants seek to bring.  *See id.* § 18(c) ("Class Action Waiver") ("Neither you, nor any other user of the Service can be a class representative, class member, or otherwise participate in a class, consolidated, or representative proceeding without having complied with the opt-out requirements" specified in the Agreement.).  SpinX will argue that Claimants have waived the right to bring the type of representative actions that they purport to bring here.  Accordingly, the Arbitrations are likely to involve litigation over complex legal issues such as these waivers and the Agreement's choice-of-law provisions.  The AAA's Commercial Arbitration Rules better accommodate such litigation because those Rules contemplate more robust case management and motions procedures than do the AAA's Consumer Arbitration Rules.

For these reasons, SpinX requests that the AAA designate the Commercial Arbitration Rules as the rules for the Arbitrations, including by permitting the parties to select an arbitrator/s using the procedure specified by the Commercial Arbitration Rules.  *See* AAA Comm. Arb. R. R-13 (providing for strike lists).

Sincerely,

KEKER, VAN NEST & PETERS LLP

Travis Silva

TS:

2036946

Terms of Service

DATE LAST MODIFIED on November 10, 2022. These are the Terms of Service for our Site, Applications and Service. For purposes of these Terms of Service, "COMPANY" shall mean SpinX Games Ltd., its partners, parent companies, subsidiaries, licensees, licensors and affiliates, including Grande Games Ltd. and Beijing Bole Technology Co., Ltd. (collectively, also referred to herein as "we", "our" or "us").

1. Acceptance of Terms

THESE TERMS OF SERVICE ("TERMS") ARE A LEGAL AGREEMENT BETWEEN YOU ("YOU" OR "YOUR") AND THE COMPANY (AS DEFINED ABOVE). BY DOWNLOADING, INSTALLING ANY OF OUR MOBILE-GAME APPLICATIONS ("APPLICATION") AND USING IT IN CONNECTION WITH SERVICES PROVIDED BY US OR OTHERWISE ACCESSED THROUGH THE USE OF AN APPLICATION (SUCH SERVICES AND THE APPLICATION COLLECTIVELY, THE "SERVICES") YOU AGREE THAT YOU HAVE READ, UNDERSTOOD, ACCEPT AND AGREE TO BE BOUND BY THESE TERMS. IF YOU DO NOT AGREE TO THESE TERMS, DO NOT ACCESS OR OTHERWISE USE THE SERVICE. YOU ALSO AFFIRM THAT YOU HAVE READ AND UNDERSTAND OUR PRIVACY POLICY.

IMPORTANT NOTE: These Terms contain a Dispute Resolution and Arbitration Provision, including a Class Action Waiver, that affects your rights under these Terms and with respect to any dispute you may have with the COMPANY. You may opt out of the binding individual arbitration and class action waiver as provided below.

COMPANY reserves the right, in its sole discretion, to modify or change these Terms at any time by posting the changes on or within the Application or other parts of the Service. Your continued use of the Service following the posting of such changes constitutes your acceptance of the revised Terms. COMPANY may use reasonable commercial efforts to provide notice of material changes to you. If the modified Terms are not acceptable to you, your only recourse is to discontinue your use of the Service. You agree that COMPANY may change any part of the Service, including its content, at any time or discontinue the Service or any part thereof, for any reason, without notice to you and without liability.

2. Privacy

You acknowledge and agree that COMPANY will collect from you and your device, use, and share certain personal information as described in our posted Privacy Policy for the respective Services. By accessing and using our Services, you agree that you have read and acknowledge such Privacy Policies.

3. Eligibility

To use the Service, you must be a natural person, at least 18 years old, who is assigned to the e-mail address associated with your registration. At our sole discretion, we may require proof that you meet this condition in connection with your use of the Service. Failure to comply with this condition will result in the closing of your Account and the loss of all Virtual Items (including Loyalty Points) (each as defined below) accumulated through your use of the Service.

4. License

To use the Service, you must have a mobile device that is compatible with the Application. COMPANY does not warrant that the Application will be compatible with your mobile device. If you decide to use the Service, subject to your agreement and compliance with these Terms and the Privacy Policy, COMPANY hereby grants you a non-exclusive, non-transferable, revocable license to install and use an object code copy of the Application for one registered account on one mobile device owned or leased solely by you. COMPANY also grants you a personal, non-exclusive, non-transferable, non-sublicensable, revocable, limited scope license to access and use those portions of the Service that are not part of the Application. Use of the Service shall be solely for your own, private, non-commercial entertainment purposes and for no other purpose whatsoever. If the Service or any part thereof is determined to be illegal under the laws of the jurisdiction in which you are situated, you shall not be granted any license to use the Application or any other part of the Service, and must refrain from using it. You may not: (i) modify, disassemble, decompile or reverse engineer the Application; (ii) rent, lease, loan, resell, sublicense, distribute or otherwise transfer the Application to any third party or use the Application to provide time sharing or similar services for any third party; (iii) make any copies of the Application; (iv) remove, circumvent, disable, damage or

otherwise interfere with security-related features of the Application, features that prevent or restrict use or copying of any content accessible through the Application, or features that enforce limitations on use of the Application; or (v) delete the copyright and other proprietary rights notices on the Application. You acknowledge that COMPANY may from time to time issue upgraded versions of the Application, and may automatically electronically upgrade the version of the Application that you are using on your mobile device, but that COMPANY has no obligation to do so. You consent to such automatic upgrading on your mobile device, and agree that the terms and conditions of these Terms will apply to all such upgrades. The foregoing license grant is not a sale of the Application or any copy thereof, and COMPANY and its third party licensors or suppliers retain all right, title, and interest in and to the Application (and any copy of the Application). Standard carrier data charges may apply to your use of the Application.

5. **Virtual Items**

From time to time during your use of the Service, you may have the opportunity to "earn", "buy" or "purchase" (a) virtual in-game items; or (b) virtual in-game points, including but not limited to virtual coins, cash or points, all for use in the Service (together with virtual in-game items, "Virtual Items"). You do not in fact "own" the Virtual Items and the amounts of any Virtual Item do not refer to any credit balance of real points or its equivalent. Rather, by "earning", "buying" or "purchasing" Virtual Items, you are granted a limited license to use the software programs that manifest themselves as the Virtual Items. The purchase and sale of such limited licenses to use Virtual Items is a completed transaction upon redemption of the applicable payment and shall under no circumstances be refundable, transferable or exchangeable including, without limitation, upon termination of your Account, termination of these Terms, and/or the discontinuation of the Service. COMPANY prohibits and does not recognize any purported transfers of Virtual Items effectuated outside of the Service, or the purported sale, gift or trade of anything that appears or originates in the Service, unless otherwise expressly authorized by COMPANY in writing. Accordingly, you may not sublicense, trade, sell or attempt to sell in-game Virtual Items for real money, or exchange Virtual Items for value of any kind outside of a game, without COMPANY's written permission. Any such transfer or attempted transfer is prohibited and void, and will subject your Account to termination. You acknowledge and agree: (a) that COMPANY may change the price of Virtual Items at any time, without notice, for any reason or for no reason, (b) that the amount of virtual points necessary to obtain certain Virtual Items may fluctuate, and (c) that COMPANY has no liability to you for any changes in the price of such Virtual Items and/or the amount of virtual points necessary to obtain Virtual Items. COMPANY reserves the right, without prior notification, to limit the quantity of the Virtual Items you can purchase and/or to refuse to allow you to purchase such Virtual Items. You acknowledge and agree that COMPANY shall have no liability for loss of Virtual Items due to any unauthorized third party activity, such as hacking, phishing, password mining, social engineering, and/or any other unauthorized third party activity. COMPANY may replace such lost Virtual Items at its sole discretion on a case-by-case basis, without incurring any further obligation or liability. COMPANY owns, has licensed, or otherwise has rights to use all of the content that appears on or in the Service. Notwithstanding any provision to the contrary herein, you agree that you have no right or title in or to any content that appears in the Service, including without limitation the Virtual Items therein, whether "earned" in a game or "purchased" from COMPANY.

6. **Loyalty Points**

You may have the opportunity to accumulate "Loyalty Points" through your use of the Service. Loyalty Points are virtual in-game points that you can use to "purchase" other Virtual Items within the Service. As with all Virtual Items, you do not in fact own the Loyalty Points you accumulate and the amounts of any Loyalty Points you accumulate do not refer to any credit balance of real currency or its equivalent. Rather, by "earning", "buying", or "purchasing" Loyalty Points, you are merely granted a limited license to use the software programs that manifest themselves as the Loyalty Points. In the event COMPANY encounters issues with the game that impact the accumulation of Loyalty Points and/or the redemption of Rewards, COMPANY reserves the right to correct any such errors.

7. **Accumulating Loyalty Points**

You may accumulate Loyalty Points by taking certain actions while using the Service. For example, you may earn Loyalty Points by posting your in-game achievements to your social media account, "liking" certain aspects of the Service, playing the games for a specified duration, or participating in certain in-game offers. The foregoing list is solely for purposes of example and explanation and is not meant to be exclusive or exhaustive. Loyalty Points are NOT and WILL NOT be awarded or earned in any way related to or based upon the outcome of any game you play during your use of the Service.

8. **Using Loyalty Points**

You may exchange your accumulated Loyalty Points for in-game Virtual Items in the Service. You may also exchange your Loyalty Points for Rewards in the "Rewards" area of the Service. In order to redeem a Reward, you must have a valid account connected with the Application. The first time you exchange your Loyalty Points for Rewards, you will be asked to provide your name and e-mail address. The name you provide must match the name that appears on a government-issued identification belonging to the person who has accumulated the Loyalty Points through his/her use of the Service.

Once you have exchanged Loyalty Points for a Reward, you are said to have "purchased" that Reward. After purchasing your Reward, you will have a limited period of time in which complete a "redemption process" by following a defined "redemption method." Redeeming a reward that has been purchased in the Service secures that reward for your specific use at a particular time. When the redemption process is complete, you may then "use" the reward. A Reward is considered "used" at the moment when it is consumed.

9. **Inactive Accounts**

If you do not use your Account by logging in using the Service at least once every 30 days, your Account will be deemed inactive. You can, at any time, reactivate your Account by logging in and using the Service. When an Account has been deemed inactive, COMPANY may, at its own discretion, expire any Loyalty Points accumulated by you. Once your account is deemed inactive, any Rewards which have been purchased but not yet redeemed may also be expired at the discretion of COMPANY.

10. **Third Party Providers of Goods and Service**

Our Partners reserve the right, in their sole discretion, to change, amend, suspend, cancel, or terminate any program they offer or any aspects and/or terms and conditions thereof, in whole or in part, at any time, with or without notice and for any or no reason. You hereby agree that COMPANY shall have no liability to you as a result of such action by a Partner.

11. **Termination**

COMPANY may terminate or suspend your Account (including, but not limited to, suspending your ability to purchase, redeem or consume Rewards) and/or your access to Service (including, but not limited to, restricting your ability to use the Application) at any time, including for breach of these Terms or otherwise, without notice and without liability to you. Upon any such termination, your access to the Service, including all User Content (as defined below) and Virtual Items, will be disabled and you will lose any Loyalty Points that you have accumulated. COMPANY shall have the right, but not obligation, to store any User Content subsequent to any such termination. You may cancel your Account at any time by discontinuing your use of the Service and/or the Application. COMPANY is in no way liable to you for the effects of any termination or cancellation on your use of the Service or the Virtual Items you have accumulated.

12. **User Content and Feedback**

The Service may include various forums, blogs, and chat rooms where you and other users can post your observations and comments on designated topics ("User Content"). COMPANY cannot guarantee that other users will not use the ideas and information that you share. Therefore, if you have an idea or information that you would like to keep confidential do not post it on the Service. COMPANY IS NOT RESPONSIBLE FOR ANY USER'S USE, MISUSE OR MISAPPROPRIATION OF ANY CONTENT OR INFORMATION POSTED IN ANY FORUMS, BLOGS AND CHAT ROOMS INCLUDING, WITHOUT LIMITATION, YOUR USE, MISUSE, OR MISAPPROPRIATION, OR ANY INFORMATION A USER MAY PROVIDE TO ANY SERVICE PROVIDER OR OTHER USERS. By making available any User Content through the Service, you hereby grant to COMPANY a worldwide, irrevocable, perpetual, non-exclusive, transferable, royalty-free license, with the right to sublicense, to use, copy, adapt, modify, distribute, license, sell, transfer, publicly display, publicly perform, transmit, stream, broadcast, access, view, and otherwise exploit such User Content only on, through or by means of the Service. COMPANY does not claim any ownership rights in any such User Content and nothing in these Terms will be deemed to restrict any rights that you may have to use and exploit any such User Content. You acknowledge and agree that you are solely responsible for all User Content that you make available through the Service. Accordingly, you represent and warrant that: (i) you either are the sole and exclusive owner of all User Content that you make available through the Service or that you have all rights, licenses, consents and releases that are necessary to grant to COMPANY the rights in such User Content as contemplated under these Terms; and (ii) neither the User Content nor your posting, uploading, publication, submission or transmittal of the User Content or COMPANY's use of the User Content (or any portion thereof) on, through or by means of the Service will infringe, misappropriate or violate a third party's patent, copyright, trademark, trade secret, moral rights or other proprietary or intellectual property rights, or rights of publicity or privacy, or result in the violation of any

applicable law or regulation.

COMPANY may or may not regulate User Content and provides no representations or guarantees regarding the accuracy, quality, or integrity of any User Content posted on the Service. You acknowledge that chats, postings, or materials posted by users are neither endorsed nor controlled by COMPANY, and these communications should not be considered reviewed or approved by COMPANY. By using the Service, you acknowledge and accept that you may be exposed to material you find offensive or objectionable. You are solely responsible for your activities in connection with User Content and you agree that COMPANY will not under any circumstances be responsible or liable for any User Content, including, but not limited to, errors in any User Content or any loss or damage incurred by use of the User Content or for any failure to or delay in removing User Content.

COMPANY reserves the right (but shall at no time be obligated) to, in its sole discretion, remove, block, edit, move, disable or permanently delete User Content from the Service with or without notice for any reason whatsoever. You hereby agree that, to the maximum extent permitted by applicable law, COMPANY shall at no time be responsible or held liable for the removal, modification or blocking of material or User Content that may be considered offensive and shall at no time be obligated to effect such removal other than under applicable law. COMPANY welcomes and encourages your feedback, comments and suggestions for improvements to the Service ("Feedback"). You may submit Feedback using the contact information provided on the Site. You acknowledge and agree that all Feedback will be the sole and exclusive property of COMPANY and you hereby irrevocably assign to COMPANY and agree to irrevocably assign to COMPANY all of your right, title, and interest in and to all Feedback, including without limitation all worldwide patent, copyright, trade secret, trademark, moral rights and other proprietary or intellectual property rights therein. At COMPANY's request and expense, you will execute documents and take such further acts as COMPANY may reasonably request to assist COMPANY to acquire, perfect, and maintain its intellectual property rights and other legal protections for the Feedback.

13.  **General Rules of Conduct and Usage**

You represent and warrant that you have full right and authority to use the Service and to be bound by these Terms. You agree that you will comply fully with all applicable laws, regulations, statutes, ordinances, and the Terms herein. You undertake that you shall not defraud, or attempt to defraud, COMPANY or other users, and that you shall not act in bad faith in your use of the Service. If COMPANY determines that you do act in bad faith in violation of these Terms, or if COMPANY determines that your actions fall outside of reasonable community standards, COMPANY may, at its sole discretion, make adjustments to the number of Loyalty Points associated with your Account, terminate your Account and/or prohibit you from using the Service. By way of example, you specifically agree that you shall not:

Download the Application, create an Account or access or use any part of the Service if you are under the age of 18;

Use the Service if you are located in a country embargoed by the United States or if you are on the U.S. Treasury Department's list of Specially Designated Nationals;

Use the Service for any commercial purpose or for the benefit of any third party or in a manner not permitted by these Terms;

Access, tamper with, or use non-public areas of the Service, COMPANY computer systems, or the computer systems of our providers and partners;

Attempt to probe, scan, or test the vulnerability of any COMPANY system or network or breach any security or authentication measures;

Avoid, bypass, remove, deactivate, impair, descramble or otherwise circumvent any technological measure implemented by COMPANY or any of our providers or any other third party (including another user) to protect the Service or any part thereof;

Attempt to use the Service on or through any platform or service that is not authorized by COMPANY;

Post, upload, publish, submit, provide access to or transmit any User Content that: (i) infringes, misappropriates or violates a third party's patent, copyright, trademark, trade secret, moral rights or other intellectual property rights, or rights of publicity or privacy; (ii) violates, or encourages any conduct that would violate, any applicable law or regulation or would give rise to civil liability; (iii) is fraudulent, false, misleading or deceptive; (iv) is defamatory, obscene, pornographic, vulgar or offensive; (v) promotes discrimination, bigotry, racism, hatred, harassment or harm against any individual or group; (vi) is violent or threatening or promotes violence or actions that are threatening to any other person; or (vii) promotes illegal or harmful activities or substances;

Interfere with the ability of other users to enjoy using the Service, including but not limited to, disrupting the COMPANY's game environment, or taking actions that interfere with or increase the cost to provide the Service for the enjoyment of other users;

Engage in any act that conflicts with the spirit or intent of the Service, including but not limited to, manipulating or circumventing game policies, game rules or these Terms;

Upload or transmit (or attempt to upload or transmit) files that contain viruses, Trojan horses, worms, time bombs, cancelbots, corrupted files or data, or any other similar software or programs that may damage the operation of the Service or the computers of other users of the Service;

Send any unsolicited or unauthorized advertising, promotional materials, e-mail, junk mail, spam, chain letters or other form of solicitation;

Create false personas, multiple identities, multiple Accounts, set up an Account on behalf of someone other than yourself or otherwise attempt to override or avoid any Loyalty Points or Rewards limits or restrictions established by COMPANY and/or any Rewards Partner;

Obtain or attempt to obtain passwords or other private information from other users of the Service, including but not limited to, personally identifiable information or financial information;

Upload or transmit (or attempt to upload or to transmit), without COMPANY's express permission, any material that acts as a passive or active information collection or transmission mechanism, including, without limitation, clear graphics interchange formats, 1×1 pixels, cookies or other similar devices;

Develop, distribute, use, or publicly inform other members of cheats, automation software, bots, hacks, mods or any other unauthorized third party software or applications;

Exploit, distribute or publicly inform other users of the Service of any game error or bug which gives users an unintended advantage;

Use Virtual Items in a manner that violates these Terms, including transferring or selling Virtual Items or fraudulently obtaining or acquiring Virtual Items or other products or services;

Sublicense, rent, lease, sell, trade, gift, bequeath or otherwise transfer your Account or any Virtual Items associated with your Account to anyone without COMPANY's written permission;

Access or use an Account or Virtual Items that have been sublicensed, rented, leased, sold, traded, gifted, bequeathed, or otherwise transferred from the original Account creator without COMPANY's permission;

Engage in any fraudulent activity with respect to payment methods or advertiser tracking mechanisms;

Violate any applicable law or regulation;

Attempt to interfere with, intercept or decipher any transmissions to or from the servers for the Service;

Interfere with, or attempt to interfere with, the access of any user, host or network, including, without limitation, sending a virus, overloading, flooding, spamming, or mail-bombing the Service; or

Encourage or enable any other individual or group to do any of the foregoing.

14. **Intellectual Property Ownership**

The Service and all content thereon or therein are protected by copyright, trademark, and other laws of the United States and foreign countries. Except as expressly provided in these Terms, COMPANY and its licensors exclusively own all right, title and interest in and to Service and all content thereon or therein, including all associated intellectual property rights. You will not remove, alter or obscure any copyright, trademark, service mark or other proprietary rights notices incorporated in or accompanying the Service. You agree that you shall not:

Modify, reverse engineer, decompile, disassemble, decipher or otherwise attempt to derive the source code for any underlying software or other intellectual property used to provide the Service without COMPANY's explicit, prior written permission;

Use, display, mirror or frame the Service, or any individual element within the Service;

Use the intellectual property of COMPANY, or any COMPANY licensor, to adapt, modify or create derivative works based on such intellectual property;

Rent, lease, loan, trade, sell/re-sell access to the Service or any information therein, in whole or part; or

Use or reproduce any COMPANY licensor, or third party trademark or logo without the prior express written consent of the owner of such trademark or logo.

15.   **Links to Third Party Sites**

The Service may contain links to third-party websites or resources that are not owned or controlled by COMPANY. You acknowledge and agree that COMPANY is not responsible or liable for: (i) the availability or accuracy of such websites or resources; or (ii) the content, products, or services on or available from such websites or resources. COMPANY does not control nor does it review, research, verify, validate or approve the third-party sites to which the Service may be linked. Such links, therefore, do not imply any endorsement by COMPANY of such websites or resources or the content, products, or services available from such websites or resources. You acknowledge sole responsibility for and assume all risk arising from your use of any such websites or resources.

16.   **DMCA Notice**

If you are a copyright owner or an agent thereof and believe your work is the subject of copyright infringement on the Service, you may submit a notification of claimed infringement under the Digital Millennium Copyright Act ("DMCA") by providing notice to COMPANY's Designated Agent the following information:

Identification of the copyrighted work claimed to have been infringed, or, if multiple copyrighted works at a single online site are covered by a single notification, a representative list of such works at that site;

Identification of the material that is claimed to be infringing or to be the subject of infringing activity and that is to be removed or access to which is to be disabled and information reasonably sufficient to permit us to locate the material;

Information reasonably sufficient to permit us to contact you, such as an address, telephone number, and, if available, an electronic mail address;

A statement that you have a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law;

A statement that the information in the notification is accurate, and under penalty of perjury, that you are authorized to act on behalf of the owner of an exclusive right that is allegedly infringed; and

A physical or electronic signature of a person authorized to act on behalf of the owner of a copyright that is allegedly infringed.

COMPANY's Designated Agent for claims of copyright infringement can be reached as follows: by e-mail at intellectualproperty@spinxgames.com or by mail at: SpinX Games Limited, Level 8, Cambridge House, Taikoo Place, 979 King's Road, Island East, Quarry Bay, Hong Kong.

You acknowledge that if you fail to comply with substantially all of the above requirements of this section your DMCA notice may not be valid and we may not be able to remove infringing content.

Please also note that under Section 512(f) of the Copyright Act, any person who knowingly materially misrepresents that material or activity is infringing may be subject to liability.

17.   **Updates to the Site and Service; Maintenance**

You acknowledge and agree that COMPANY may update the Service with or without notifying you. COMPANY may require that you accept updates to the Service and you may also need to update third party software from time to time in order to receive the Service. COMPANY conducts maintenance work on its system from time to time. A portion, or sometimes all, of the features of the Service will not be available during maintenance periods. All problems encountered during the use of the Service, including those with regard to

your Account, can be reported to COMPANY when the problem is encountered privacy@spinxgames.com.

18. **Dispute Resolution and Arbitration**

If you live in the United States or another jurisdiction that allows you to agree to arbitration, you and COMPANY agree that all Disputes, as defined below, between you and COMPANY will be settled by binding arbitration, unless otherwise provided herein.

This agreement does not apply (1) if you are a resident of any jurisdiction which prohibits this arbitration agreement, (2) if you opt out of this arbitration agreement as described in section (e) below, or (3) to certain types of Disputes described in section (e) below. Please read this provision carefully.

a. **Purpose**

This Dispute Resolution and Arbitration Provision ("Provision") facilitates the prompt and efficient resolution of any disputes that may arise between you and COMPANY.

Arbitration is a form of private dispute resolution in which persons with a dispute waive their rights to file a lawsuit, to proceed in court and to a jury trial, and instead submit their disputes to a neutral third person (or arbitrator) for a binding decision. In the absence of an arbitration agreement, you may otherwise have a right or opportunity to bring claims in court, before a judge or jury, and/or participate in or be represented in a case filed in court by others (including, but not limited to, class actions). Arbitration replaces the right to go to court. Except as otherwise provided herein, by agreeing to these Terms, you waive your right to litigate claims in court and waive the right to have your claims heard by a judge or jury. There is no judge or jury in arbitration, and court review of an arbitration award is limited. The arbitrator must follow this agreement and can award the same damages and relief as a court (including attorneys' fees).

You have the right to opt-out of this Provision (as explained below), which means you would retain your right to litigate your disputes in a court, either before a judge or jury.

For the purpose of these Terms, including this Provision specifically, "COMPANY" means SpinX Games, Ltd., its partners, parent companies, subsidiaries, licensees, licensors and affiliates, including Grande Games, Ltd. and Beijing Bole Technology Co., Ltd. "Dispute" means any dispute, claim, or controversy between you and COMPANY regarding any aspect of your relationship with COMPANY, whether based in contract, statute, regulation, ordinance, tort (including, but not limited to, fraud, misrepresentation, fraudulent inducement, or negligence), or any other legal or equitable theory, and includes the validity, enforceability or scope of this Provision (with the exception of the enforceability of the Class Action Waiver clause below). "Dispute" is to be given the broadest possible meaning that will be enforced.

b. **Agreement to Arbitrate / Waiver of Right to Jury Trial**

YOU AND COMPANY EACH AGREE THAT, EXCEPT AS PROVIDED BELOW, ANY AND ALL DISPUTES, AS DEFINED ABOVE, WHETHER PRESENTLY IN EXISTENCE OR BASED ON ACTS OR OMISSIONS IN THE PAST OR IN THE FUTURE, WILL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION RATHER THAN IN COURT IN ACCORDANCE WITH THIS PROVISION, AND YOU ARE WAIVING YOUR RIGHT TO A TRIAL BY JURY OR TO PARTICIPATE AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS ACTION OR REPRESENTATIVE PROCEEDING.

you understand and agree that by entering into this agreement you and COMPANY are each waiving the right to a jury trial or a trial before a judge in a public court. In the absence of this Provision, you and COMPANY might otherwise have had a right or opportunity to bring Disputes in a court, before a judge or jury, and/or to participate or be represented in a case filed in court by others (including class actions). Except as otherwise provided below, those rights are waived. Other rights that you would have if you went to court, such as the right to appeal and to certain types of discovery, may be more limited or may also be waived.

c. **Class Action Waiver**

Except as otherwise provided in this Provision, the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a class or representative proceeding or claims (such as a class action, consolidated action or private attorney general action) unless both you and COMPANY specifically agree to do so following initiation of the arbitration. If you choose to pursue your Dispute in court by opting out of this Provision, as specified above, this Class Action Waiver will not apply to you. Neither you, nor any other user of the Service can be a class representative, class member, or otherwise participate in a class,

consolidated, or representative proceeding without having complied with the opt-out requirements above.

        d.  **Pre-Arbitration Claim Resolution**

For all Disputes, whether pursued in court or arbitration, you must first give COMPANY an opportunity to resolve the Dispute. You must commence this process by written notification to:

**For all United States users:** SpinX Games Limited, 2021 Fillmore St. #93, San Francisco, CA 94115.

**For all other users:** SpinX Games Limited, Level 8, Cambridge House, Taikoo Place, 979 King's Road, Island East, Quarry Bay, Hong Kong.

That written notification must include (1) your name, (2) your address, (3) a written description of your Claim, and (4) a description of the specific relief you seek. If COMPANY does not resolve the Dispute within 45 days after it receives your written notification, you may pursue your Dispute in arbitration. You may pursue your Dispute in a court only under the circumstances described below.

        e.  **Exclusions from Arbitration/Right to Opt Out**

Notwithstanding the above, you or COMPANY may choose to pursue a Dispute in court and not by arbitration if (i) the Dispute qualifies, it may be initiated in small claims court; or (ii) YOU PROVIDE THE COMPANY WRITTEN NOTICE OF YOUR DESIRE TO OPT-OUT OF THESE ARBITRATION PROCEDURES WITHIN 30 DAYS FROM THE DATE THAT YOU FIRST CONSENT TO THIS AGREEMENT (the "Arbitration Opt-Out Notice"). To opt-out of these arbitration procedures, you must provide written notification to:

**For all United States users:** SpinX Games Limited, 2021 Fillmore St. #93, San Francisco, CA 94115.

**For all other users:** SpinX Games Limited, Level 8, Cambridge House, Taikoo Place, 979 King's Road, Island East, Quarry Bay, Hong Kong.


Your written notification must include (1) your name, (2) your address, and (3) a clear statement that you do not wish to resolve disputes with COMPANY through arbitration. Your decision to opt-out of this Provision will have no adverse effect on your relationship with COMPANY. If you do not provide the Company with an Arbitration Opt-Out Notice within 30 days from the date that you first consent to these Terms, you will be deemed to have knowingly and intentionally waived your right to litigate any dispute except as expressly set forth in clauses (i) and (ii) above.

Additionally, notwithstanding the above, COMPANY reserves the right to bring an action in any court of competent jurisdiction against you to stop and/or seek compensation for the intentional or willful misuse or abuse (e.g. hacking or falsifying location) of its intellectual property, services, and products.

        f.  **Arbitration Procedures – United States Users**

If this Provision applies and the Dispute is not resolved as provided above ("Pre-Arbitration Claim Resolution") either you or COMPANY may initiate arbitration proceedings. The American Arbitration Association ("AAA"), www.adr.org, or JAMS, www.jamsadr.com, will arbitrate all Disputes, and the arbitration will be conducted before a single arbitrator. The arbitration shall be commenced as an individual arbitration. Unless both you and the Company agree in writing, the arbitrator shall not consolidate more than one person's claims, and may not otherwise preside over any form of any class or representative proceeding. All issues shall be for the arbitrator to decide, including the scope and enforceability of this Provision, as well as any dispute related to its interpretation, applicability, or formation, including any claim that all or any part of it is void or voidable. For arbitration before AAA, for Disputes of less than $75,000, the AAA's Supplementary Procedures for Consumer-Related Disputes will apply; for Disputes involving $75,000 or more, the AAA's Commercial Arbitration Rules will apply. In either instance, the AAA's Optional Rules for Emergency Measures Of Protection shall apply. The AAA rules are available at www.adr.org or by calling 1-800-778-7879. For arbitration before JAMS, the JAMS Comprehensive Arbitration Rules & Procedures and the JAMS Recommended Arbitration Discovery Protocols For Domestic, Commercial Cases will apply. The JAMS rules are available at www.jamsadr.com or by calling 1-800-352-5267. This Provision governs in the event it conflicts with the applicable arbitration rules. Under no circumstances will class action procedures or rules apply to the arbitration. Because the Service and these Terms concern interstate commerce, the Federal Arbitration Act ("FAA") governs the arbitrability of all Disputes.

However, the arbitrator will apply applicable substantive law consistent with the FAA and the applicable statute of limitations or condition precedent to suit.

**Arbitration Award** – The arbitrator may award on an individual basis any relief that would be available pursuant to applicable law, and will not have the power to award relief to, against or for the benefit of any person who is not a party to the proceeding. The arbitrator will make any award in writing but need not provide a statement of reasons unless requested by a party. Such award will be final and binding on the parties, except for any right of appeal provided by the FAA, and may be entered in any court having jurisdiction over the parties for purposes of enforcement.

**Location of Arbitration** – For Disputes between the COMPANY and users who are residents of the United States, you or COMPANY may initiate arbitration in either San Francisco, California or the federal judicial district that includes the address you provide in your written notification of Pre-Arbitration Claim Resolution. In the event that you select the federal judicial district that includes the address you provide in your written notification of Pre-Arbitration Claim Resolution, COMPANY may transfer the arbitration to San Francisco, California in the event that it agrees to pay any additional fees or costs you incur as a result of the transfer, as determined by the arbitrator.

**Payment of Arbitration Fees and Costs** – Each Party shall pay its own arbitration filing fees and arbitrator's costs and expenses. You are responsible for all fees and costs that You incur in the arbitration, including, but not limited to, attorneys or expert witnesses. Fees and costs may be awarded as provided pursuant to applicable law.

      g. **Arbitration Procedures – Users Outside the United States**

For Disputes between the COMPANY and users who are not residents of the United States that are not resolved through the Pre-Arbitration Claim Resolution procedures set forth above, either you or COMPANY may initiate arbitration by submitting the Dispute to the Hong Kong International Arbitration Centre ("HKIAC") for arbitration. Such arbitration shall be conducted exclusively in Hong Kong, at HKIAC, in accordance with the UNCITRAL Arbitration Rules in effect at the time of applying for arbitration. The appointing authority shall be HKIAC. The language to be used in the arbitral preceding shall be English. In such arbitration before HKIAC, this Agreement shall be construed in accordance with and governed by the laws of Hong Kong, regardless of choice of laws or conflicts of laws.

The arbitral award is final and binding upon both parties and the award shall be rendered in the English language pursuant to the laws of Hong Kong. No demand for arbitration may be made after the date when the institution of legal or equitable proceedings based on such claim or dispute would be barred by the applicable statute of limitation.

      h. **Severability**

If any clause within this Provision (other than the Class Action Waiver clause above) is found to be illegal or unenforceable, that clause will be severed from this Provision, and the remainder of this Provision will be given full force and effect. If the Class Action Waiver clause is found to be illegal or unenforceable, this entire Provision will be unenforceable and the Dispute will be decided by a court.

      i. **Continuation**

This Provision shall survive this Agreement, the termination of your Account (if applicable), and/or your access to or use of the Service.

    19. **Disclaimer of Warranties**

The Service (including the Application) and all content thereon or therein are provided "as is", without warranty of any kind, either express, implied or statutory. Without limiting the foregoing, COMPANY our partners, and our and their respective affiliates, subsidiaries, officers, directors, employees, agents and licensors (collectively, the "COMPANY Parties") explicitly disclaim any warranties of merchantability, fitness for a particular purpose, quiet enjoyment or non-infringement, and any warranties arising out of course of dealing or usage of trade. The COMPANY Parties make no warranty that the Service will meet your requirements or be available on an uninterrupted, secure, or error-free basis. The COMPANY Parties make no warranty regarding the quality of any products, services or content obtained through the service or the accuracy, timeliness, truthfulness, completeness or reliability of any content obtained through service.

You are solely responsible for all of your communications and interactions with other users of the Service and with other persons with whom you communicate or interact as a result of your use of the Service. You understand that COMPANY does not screen or inquire

into the background of any users of the Service, nor does COMPANY make any attempt to verify the statements of users of the Service. The COMPANY Parties make no representations or warranties as to the conduct of users of the service or their compatibility with any current or future users of the service. You agree to take reasonable precautions in all communications and interactions with other users of the service and with other persons with whom you communicate or interact as a result of your use of the service, particularly if you decide to meet offline or in person. Some jurisdictions do not allow the disclaimer of implied terms in contracts with consumers and as a result the disclaimers of this section

20. **Limitation of Liability**

You acknowledge and agree that, to the maximum extent permitted by law, the entire risk arising out of your access to and use of the service, including the application, remains with you. Neither the COMPANY Parties nor any other party involved in creating, producing, or delivering the service will be liable for any incidental, special, exemplary or consequential damages, including lost profits, loss of data, loss of goodwill, service interruption, computer damage or system failure, the cost of substitute products or services, or for any damages for personal or bodily injury or emotional distress arising out of or in connection with these terms or from the use of or inability to use the service, or from any communications, interactions or meetings with other users of the service or other persons with whom you communicate or interact as a result of your use of the Service, whether based on breach of warranty, breach of contract, tort (including negligence), product liability or any other legal theory, and whether or not the company parties have been informed of the possibility of such damage, even if a limited remedy set forth herein is found to have failed of its essential purpose.

In no event will the COMPANY Parties' aggregate liability arising out of or in connection with these terms or from the use of or inability to use the services, any part thereof, or any content exceed five hundred dollars ($500). The limitations of damages set forth above are fundamental elements of the basis of the bargain between COMPANY and you. Some jurisdictions do not allow the exclusion or limitation of liability for consequential or incidental damages, so the above limitation may not apply to you.

21. **Indemnity**

You agree to indemnify, save, and hold the COMPANY Parties harmless from any claims, losses, damages, liabilities, including legal fees and expenses, arising out of your use or misuse of the Service, any violation by you of these Terms, any of your User Content, or any breach of the representations, warranties, and covenants made by you herein. COMPANY reserves the right, at your expense, to assume the exclusive defense and control of any matter for which you are required to indemnify COMPANY, and you agree to cooperate with COMPANY's defense of these claims. COMPANY will use reasonable efforts to notify you of any such claim, action, or proceeding upon becoming aware of it. You agree that the provisions in this Indemnity section will survive this Agreement, the termination of your Account (if applicable), and/or your access to or use of the Service.

22. **Additional Mobile Application Terms**

The following additional terms and conditions apply with respect to any Application that COMPANY provides to you designed for use on an Apple iOS-powered mobile device (an "iOS App"):

You acknowledge that these Terms are between you and COMPANY only, and not with Apple, Inc. ("Apple").

Your use of the iOS App must comply with Usage Rules set forth in Apple's then-current App Store Terms of Service.

COMPANY, and not Apple, is solely responsible for our iOS App and the services and content available thereon. You acknowledge that Apple has no obligation to provide maintenance and support services with respect to our iOS App. To the maximum extent permitted by applicable law, Apple will have no warranty obligation whatsoever with respect to our iOS App and any other claims, losses, liabilities, damages, costs or expenses attributable to any failure of the iOS App to conform to any warranty.

You agree that COMPANY, and not Apple, is responsible for addressing any claims by you or any third party relating to our iOS App or your possession and/or use of our iOS App, including, but not limited to: (i) product liability claims; (ii) any claim that the iOS App fails to conform to any applicable legal or regulatory requirement; and (iii) claims arising under consumer protection or similar legislation, and all such claims are governed solely by these Terms and any law applicable to us as provider of the iOS App.

You agree that COMPANY, and not Apple, shall be responsible, to the extent required by these Terms, for the investigation, defense, settlement and discharge of any third party intellectual property infringement claim related to our iOS App or your possession and use

of our iOS App.

You represent and warrant that (i) you are not located in a country that is subject to a U.S. Government embargo, or that has been designated by the U.S. Government as a "terrorist supporting" country; and (ii) you are not listed on any U.S. Government list of prohibited or restricted parties.

You agree to comply with all applicable third party terms of agreement when using our iOS App (e.g., you must not be in violation of your wireless data service terms of agreement when using the iOS App).

You agree that Apple and Apple's subsidiaries are third party beneficiaries to these Terms as they relate to your license to use the iOS App. Upon your acceptance of these Terms, Apple will have the right (and will be deemed to have accepted the right) to enforce these Terms against you as they relate to your license of the iOS App as a third party beneficiary thereof.

The following additional terms and conditions apply with respect to any application that COMPANY provides to you designed for use on an Android-powered mobile device (an "Android App"):

You acknowledge that these Terms are between you and COMPANY only, and not with Google, Inc. ("Google").

Your use of the Android App must comply with Google's then-current Google Play Terms of Service.

COMPANY, and not Google, is solely responsible for the Android App, the services and content available thereon and the support and maintenance thereof. Google has no obligation or liability to you with respect to the Android App or these Terms.

23. **Controlling Law and Jurisdiction**

To the extent these Terms allow you or COMPANY to initiate litigation in a court, other than for small claims court actions, you and COMPANY agree to the exclusive jurisdiction of and venue in the state and federal courts located in San Francisco, California. You and COMPANY each hereby waives any objection to jurisdiction and venue in such courts. Except as provided in the "Dispute Resolution and Arbitration Provision" (above), these Terms, your use of the Service, and all claims or causes of action (whether in contract, tort, or statute), that may be based upon, arise out of, or relate to these Terms, shall be governed by and enforced in accordance with the laws of the State of California, including its statutes of limitation, without regard to its conflict of laws provisions. If you reside in a country in which this clause is prohibited by law, this section does not apply to you.

24. **Entire Agreement**

These Terms constitute the entire and exclusive understanding and agreement between COMPANY and you regarding the Service, and these Terms supersede and replace any and all prior oral or written understandings or agreements between COMPANY and you regarding the Service.

25. **Assignment**

You may not assign or transfer these Terms, by operation of law or otherwise, without COMPANY's prior written consent. Any attempt by you to assign or transfer these Terms, without such consent, will be of no effect. COMPANY may assign or transfer these Terms, at its sole discretion, without restriction. Subject to the foregoing, these Terms will bind and inure to the benefit of the parties, their successors and permitted assigns.

26. **Notices**

Any notices or other communications permitted or required hereunder, including those regarding modifications to these Terms, will be in writing and given by COMPANY (i) via e-mail (in each case to the address that you provided by your Facebook Login) or (ii) by posting to the Service. Notices sent by email will be effective when we send the email, and notices we provide by posting to the Service will be effective upon posting. For all United States users, any notices or other communications permitted or required hereunder by you, shall be in writing and addressed to: SpinX Games Limited, 2021 Fillmore St. #93, San Francisco, CA 94115. For all other users, any notices or other communications permitted or required hereunder by you, shall be in writing and addressed to SpinX Games Limited, Level 8, Cambridge House, Taikoo Place, 979 King's Road, Island East, Quarry Bay, Hong Kong. Any notices that you provide without compliance with this section shall have no legal effect.

27. **California Consumer Notice**

Under California Civil Code section 1789.3, California users are entitled to the following consumer rights notice: The Service is provided by SpinX Games Limited, Level 8, Cambridge House, Taikoo Place, 979 King's Road, Island East, Quarry Bay, Hong Kong. If you have a question or complaint regarding the Service, you may contact us via e-mail for Cash Frenzy at cashfrenzy-support@spinxgames.com; Jackpot Crush at jackpotcrush-support@spinxgames.com; Lotsa Slots at LotsaSlots-cs@spinxgames.com; Vegas Friends at VegasFriends-cs@spinxgames.com; Cash Bash at cashbash-support@spinxgames.com; Cash Club at cashclub-support@spinxgames.com; and Jackpot World at jackpotworld-support@spinxgames.com. You may also contact us by writing to SpinX Games Limited, Level 8, Cambridge House, Taikoo Place, 979 King's Road, Island East, Quarry Bay, Hong Kong.

California residents may reach the Complaint Assistance Unit of the Division of Consumer Service of the California Department of Consumer Affairs by post at 1625 North Market Blvd., Sacramento, CA 95834 or by telephone at (916) 445-1254 or (800) 952-5210 or Hearing Impaired at TDD (800) 326-2297 or TDD (916) 322-1700.

28. **Force Majeure**

In delivering the Service or providing the Applications, COMPANY shall not be liable with respect to any damages, injuries, nonperformance or delay in performance by reason of any act of God, weather, fire, flood, plague, acts of terror or foreign enemy, satellite or network failure, governmental order or regulation, trade dispute, or any other cause beyond its respective control.

29. **Waiver; Severability**

The failure of COMPANY to enforce any right or provision of these Terms will not constitute a waiver of future enforcement of that right or provision. The waiver of any such right or provision will be effective only if in writing and signed by a duly authorized representative of COMPANY. Except as expressly set forth in these Terms, the exercise by either party of any of its remedies under these Terms will be without prejudice to its other remedies under these Terms or otherwise. If for any reason a court of competent jurisdiction finds any provision of these Terms invalid or unenforceable, that provision will be enforced to the maximum extent permissible and the other provisions of these Terms will remain in full force and effect.

30. # Subscription Terms

SpinX is pleased to offer subscription services for some of its games. Our subscription services include a recurring payment plan for our Services, including Virtual Items, as defined in our Terms of Service.

By clicking the purchase button within one of our games or by purchasing a subscription through a platform provider such as Google or Apple, you are agreeing to purchase a subscription, are requesting that SpinX begin supplying the subscription services immediately, are entering into a periodic subscription contract with SpinX, and are authorizing a charge of a periodic subscription fee to you at the rate quoted at the time of purchase. Your subscription will automatically renew at the start of each billing period unless and until you cancel your subscription or we terminate it. Please note that subscription prices, charges and service offerings are subject to change. If SpinX makes a change to the subscription rate, we will let you know in advance.

**Your purchase of a SpinX subscription service will be processed through a platform provider, such as Apple or Google. The platform will charge you for the subscription fee and the platform's payment terms will apply. You may cancel your subscription service at any time directly through the platform. Please review the appropriate platform's terms of service and payment terms for additional information.**

ANY SUBSCRIPTION PAYMENTS THAT HAVE ALREADY BEEN PROCESSED ARE NONREFUNDABLE AND THERE ARE NO REFUNDS OR CREDITS FOR PARTIALLY USED SUBSCRIPTION PERIODS.

SpinX may occasionally offer promotions to players who agree to start a subscription or who already have a current subscription. These promotional items will not be a part of your ongoing subscription.

Please also refer to our Terms of Service and Privacy Policy, which govern use of SpinX's games and services.

If you have any questions regarding our subscription services, please contact our customer support team at support@bolegames.mail.helpshift.com.

THE SECTION TITLES IN THESE TERMS OF SERVICE ARE FOR CONVENIENCE ONLY AND HAVE NO LEGAL OR CONTRACTUAL EFFECT.

# Exhibit C

**From:** Andrew Wheeler-Berliner <Andrew@davisnorris.com>
**Sent:** Tuesday, January 17, 2023 7:49 AM
**To:** Travis Silva <TSilva@keker.com>; consumerfiling@adr.org
**Cc:** ldroubi@blhny.com; Johnny Norris <jnorris@davisnorris.com>; Ajay Krishnan
<AKrishnan@keker.com>
**Subject:** Re: Correspondence re Bennefield v. SpinX, AAA Ref. No. 01-22-0005-2594; King v. SpinX, AAA
Ref. No. 01-22-005-2897; Pyles v. SpinX, AAA Ref. No. 01-22-0005-2591; Ross v. SpinX, AAA Ref. No. 01-
22-0005-2143; Viel v. SpinX, AAA Ref. No. 01-22-005-2748

[EXTERNAL]

Dear AAA Consumer Filing office,

Attached is Claimants' response to SpinX's letter sent on Jan. 12, 2023 regarding Bennefield v. SpinX,
AAA Ref. No. 01-22-0005-2594; King v. SpinX, AAA Ref. No. 01-22-005-2897; Pyles v. SpinX, AAA Ref. No.
01-22-0005-2591; Ross v. SpinX, AAA Ref. No. 01-22-0005-2143; Viel v. SpinX, AAA Ref. No. 01-22-005-
2748. Counsel for Respondent is copied on this email.

Thank you for your attention to this matter,
Andrew Wheeler-Berliner

**From:** Travis Silva <TSilva@keker.com>
**Date:** Thursday, January 12, 2023 at 1:28 PM
**To:** "consumerfiling@adr.org" <consumerfiling@adr.org>
**Cc:** Andrew Wheeler-Berliner <Andrew@davisnorris.com>, "ldroubi@blhny.com"
<ldroubi@blhny.com>, Johnny Norris <jnorris@davisnorris.com>, Ajay Krishnan
<AKrishnan@keker.com>
**Subject:** Correspondence re Bennefield v. SpinX, AAA Ref. No. 01-22-0005-2594; King v. SpinX,
AAA Ref. No. 01-22-005-2897; Pyles v. SpinX, AAA Ref. No. 01-22-0005-2591; Ross v. SpinX, AAA
Ref. No. 01-22-0005-2143; Viel v. SpinX, AAA Ref. No. 01-22-005-2748

Dear AAA Consumer Filing office,

Please find enclosed correspondence relating to Bennefield v. SpinX, AAA Ref. No. 01-22-0005-2594;
King v. SpinX, AAA Ref. No. 01-22-005-2897; Pyles v. SpinX, AAA Ref. No. 01-22-0005-2591; Ross v. SpinX,
AAA Ref. No. 01-22-0005-2143; Viel v. SpinX, AAA Ref. No. 01-22-005-2748.

Travis Silva

**Travis Silva** (he/him/his)
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
415 962 8819 direct | 415 391 5400 main
tsilva@keker.com | vcard | keker.com

# Davis·Norris

January 17, 2023

American Arbitration Association
1101 Laurel Oak Rd.
Voorhees, NJ 08043

Re: *Bennefield v. SpinX Games Ltd.*, AAA Ref. No. 01-22-0005-2594
*King v. SpinX Games Ltd.*, AAA Ref. No. 01-22-005-2897
*Pyles v. SpinX Games Ltd.*, AAA Ref. No. 01-22-005-2591
*Ross v. SpinX Games Ltd.*, AAA Ref. No. 01-22-0005-2143
*Viel v. SpinX Games Ltd.*, AAA Ref. No. 01-22-005-2748

Dear AAA:

I write in response to Travis Silva's letter dated January 12, 2023, concerning the above-referenced arbitrations.  Mr. Silva, counsel for respondent SpinX Games Ltd., first demands that these consumer cases pending in the eastern U.S. on behalf of consumers who reside in the eastern U.S. be transferred to San Francisco based on a provision in the SpinX terms and conditions, and then demands that the AAA apply the AAA Commercial Arbitration Rules instead of the Consumer Arbitration Rules.  Because Rule R-1 of the Consumer Arbitration Rules requires that these arbitrations be administered under the Consumer Arbitration Rules regardless of contrary provisions in the applicable arbitration agreements, the AAA Consumer Due Process Protocols apply.  The Consumer Due Process Protocols, in turn, forbid a situation where consumers are forced to attend hearings and prosecute consumer arbitrations in a forum over a thousand miles from the consumer's residence.  We therefore ask that the AAA deny both of SpinX's demands.

These arbitrations involve consumers (Bennefield, King, Pyles, Ross, and Viel) in five different states (New Jersey, Ohio, Kentucky, Georgia, and Massachusetts) and SpinX Games Ltd.'s gambling game application (or app) that is used on various platforms on electronic devices like cell phones or computers. The arbitration provision under which these arbitrations are brought are contained in a link within Respondent's application and is the same for every user of its app.

Consumer Arbitration Rule R-1 sets forth when the AAA applies the Consumer Arbitration Rules to an arbitration such as these.  Rule R-1(a) states:

> (a) The parties shall have made these Consumer Arbitration Rules ("Rules") a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association ("AAA"), and

> 1) have specified that these Consumer Arbitration Rules shall apply;

2) have specified that the Supplementary Procedures for Consumer-Related Disputes shall apply, which have been amended and renamed the Consumer Arbitration Rules;

3) the arbitration agreement is contained within a consumer agreement, as defined below, that does not specify a particular set of rules; or

4) the arbitration agreement is contained within a consumer agreement, as defined below, that specifies a particular set of rules other than the Consumer Arbitration Rules.

Consumer Arbitration Rule R-1 goes on to say that:

When parties have provided for the AAA's rules or AAA administration as part of their consumer agreement, they shall be deemed to have agreed that the application of the AAA's rules and AAA administration of the consumer arbitration shall be an *essential term of their consumer agreement*."

(emphasis supplied).  The dispositive issue under Rule R-1 is whether the applicable arbitration agreements are "contained within a consumer agreement," because under the rule any arbitration agreement contained within "a consumer agreement" that provides for AAA administration must be administered under the Consumer Arbitration Rules regardless of whether the agreement specifies the Consumer Arbitration Rules, its predecessor Supplemental Procedures for Consumer-Related Disputes, no particular set of rules, or even a "set of rules other than the Consumer Arbitration Rules."

The AAA defines a consumer agreement as an agreement between an individual consumer and a business where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use.

Consumer Arbitration Rule R-1.  The standardized arbitration agreements contained in the take-it-or-leave-it SpinX terms and conditions unquestionably meet this definition, and SpinX's counsel does not even attempt to argue to the contrary.  The agreements are contained in a link in SpinX's app, to which customers are forced to agree in order to use the app at all.  And obviously a gambling game is for "personal" use.

The arguments SpinX does make are simultaneously irrelevant and wrong.  The company first argues that the Commercial Arbitration Rules are "more appropriate here" because claimants seek damages consisting of all money residents of the relevant states spent on SpinX's illegal gambling games.  Since the claimants seek such damages for their own benefit, SpinX's argument simply complains that claimants seek too much for the Consumer Arbitration Rules to apply.  Nothing in Rule R-1 requires a plaintiff to limit his or her damages that are legally available to have the Consumer Arbitration Rules to apply.

SpinX also argues that the case involves "complex" legal issues, such that the "more robust case management and motions practice" of the Commercial Arbitration Rules.  Rule R-1 contains no "simple cases only" requirement.  Our own experience handling thousands of consumer arbitrations that were far more complex than the issues likely to be raised in these matters is that the hundreds of arbitrators before whom we have practiced had no trouble resolving those far more complex issues under the Consumer Arbitration Rules.  Even if the issues raised in the present arbitrations are complex to any degree, however, the AAA Consumer Arbitration Rules provide for mechanisms to ensure that the issues can be addressed properly. For instance, under the "Costs of Arbitration" section, the AAA states that, "The AAA reserves the right to assess additional administrative fees for services performed by the AAA beyond those provided for in these Rules and which may be required by the parties' agreement or stipulation." That section goes on to address "Neutral Arbitrator's Compensation" in section (ii) saying:

> The AAA reserves the right to raise the daily or per-case arbitrator compensation rate because of the complexity of the case or for processes and procedures beyond those provided for in these Rules and which may be required by the parties' requests, agreement, or stipulation (1) at the time of the AAA's initiation of the case; (2) upon the addition of a new party; (3) when a change of claim is made and, if necessary, approved by the arbitrator(s); (4) or if circumstances arise during the course of the case due to the *complexity of issues and submissions* by the parties. Any determination by the AAA on compensation rates is in the sole discretion of the AAA and such decision is final and binding on the parties and Arbitrator.

(emphasis supplied).

AAA contemplates that "complex" arbitrations can be litigated under the Consumer Arbitration Rules as my firm has experienced in much more complex matters in the past. Claimant would suggest that it would be appropriate for AAA, if the Respondent believes that this matter raises complex issues, to provide the neutral arbitrators appointed in these matters with compensation including their typical hourly rate, or the amount provided by the Consumer Arbitration Rules, whichever is greater.

Turning to the transfer request, because the Consumer Arbitration Rules apply, and specifically Rule 11 which dictates that the question whether to grant SpinX's request to transfer the cases across the country to California must be evaluated under Principle 7 of the AAA Consumer Due Process Protocols, which provides:

> In the case of face-to-face proceedings, the proceedings should be conducted at a location which is reasonably convenient to both parties with due consideration of their ability to travel and other pertinent circumstances. If the parties  are unable to agree on a location, the determination should be made by the Independent ADR Institution or by the Neutral.

SpinX does not argue, because it cannot, that San Francisco is a "reasonably convenient" location for arbitration hearings for claimants from New Jersey, Ohio, Kentucky, Georgia, and Massachusetts.  We submit that transferring these cases to California, even if authorized by the arbitration agreement, will serve no purpose other than to inconvenience the claimants and hinder their ability to fairly prosecute their claims.

SpinX's opening gambit in these cases is to seek to transfer the cases to a venue hundreds if not thousands of miles away from the claimants' home state, and to apply a set of rules that, unlike the Consumer Arbitration Rules, would require claimants to pay half of the arbitration costs and fees.  It should not be allowed.

Please let us know if the AAA needs anything further from the claimants concerning these issues.

*/s/John E. Norris*
John E. Norris
Davis Norris, LLP
Attorney for Claimants

# Exhibit D

| | |
|---|---|
| **From:** | Travis Silva |
| **To:** | Andrew Wheeler-Berliner; consumerfiling@adr.org |
| **Cc:** | ldroubi@blhny.com; Johnny Norris; Ajay Krishnan |
| **Subject:** | RE: Correspondence re Bennefield v. SpinX, AAA Ref. No. 01-22-0005-2594; King v. SpinX, AAA Ref. No. 01-22-005-2897; Pyles v. SpinX, AAA Ref. No. 01-22-005-2591; Ross v. SpinX, AAA Ref. No. 01-22-0005-2143; Viel v. SpinX, AAA Ref. No. 01-22-005-2748 |
| **Date:** | Friday, January 27, 2023 9:02:22 AM |
| **Attachments:** | 2023 01 27 reply to Norris ltr.pdf |

Dear AAA Consumer Filing office,

Attached is Respondent's reply to Claimants' letter sent on Jan. 17, 2023 regarding Bennefield v. SpinX, AAA Ref. No. 01-22-0005-2594; King v. SpinX, AAA Ref. No. 01-22-005-2897; Pyles v. SpinX, AAA Ref. No. 01-22-005-2591; Ross v. SpinX, AAA Ref. No. 01-22-0005-2143; Viel v. SpinX, AAA Ref. No. 01-22-005-2748. Counsel for Claimants is copied on this email.

Thank you for your attention to this matter,
Travis Silva

---

**Travis Silva** (he/him/his)
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
415 962 8819 direct | 415 391 5400 main
tsilva@keker.com | vcard | keker.com

---

**From:** Andrew Wheeler-Berliner <Andrew@davisnorris.com>
**Sent:** Tuesday, January 17, 2023 7:49 AM
**To:** Travis Silva <TSilva@keker.com>; consumerfiling@adr.org
**Cc:** ldroubi@blhny.com; Johnny Norris <jnorris@davisnorris.com>; Ajay Krishnan <AKrishnan@keker.com>
**Subject:** Re: Correspondence re Bennefield v. SpinX, AAA Ref. No. 01-22-0005-2594; King v. SpinX, AAA Ref. No. 01-22-005-2897; Pyles v. SpinX, AAA Ref. No. 01-22-005-2591; Ross v. SpinX, AAA Ref. No. 01-22-0005-2143; Viel v. SpinX, AAA Ref. No. 01-22-005-2748

**[EXTERNAL]**

Dear AAA Consumer Filing office,

Attached is Claimants' response to SpinX's letter sent on Jan. 12, 2023 regarding Bennefield v. SpinX, AAA Ref. No. 01-22-0005-2594; King v. SpinX, AAA Ref. No. 01-22-005-2897; Pyles v. SpinX, AAA Ref. No. 01-22-005-2591; Ross v. SpinX, AAA Ref. No. 01-22-0005-2143; Viel v. SpinX, AAA Ref. No. 01-22-005-2748. Counsel for Respondent is copied on this email.

Thank you for your attention to this matter,
Andrew Wheeler-Berliner

**From:** Travis Silva <TSilva@keker.com>

**Date:** Thursday, January 12, 2023 at 1:28 PM

**To:** "consumerfiling@adr.org" <consumerfiling@adr.org>

**Cc:** Andrew Wheeler-Berliner <Andrew@davisnorris.com>, "ldroubi@blhny.com" <ldroubi@blhny.com>, Johnny Norris <jnorris@davisnorris.com>, Ajay Krishnan <AKrishnan@keker.com>

**Subject:** Correspondence re Bennefield v. SpinX, AAA Ref. No. 01-22-0005-2594; King v. SpinX, AAA Ref. No. 01-22-005-2897; Pyles v. SpinX, AAA Ref. No. 01-22-005-2591; Ross v. SpinX, AAA Ref. No. 01-22-0005-2143; Viel v. SpinX, AAA Ref. No. 01-22-005-2748

Dear AAA Consumer Filing office,

Please find enclosed correspondence relating to Bennefield v. SpinX, AAA Ref. No. 01-22-0005-2594; King v. SpinX, AAA Ref. No. 01-22-005-2897; Pyles v. SpinX, AAA Ref. No. 01-22-005-2591; Ross v. SpinX, AAA Ref. No. 01-22-0005-2143; Viel v. SpinX, AAA Ref. No. 01-22-005-2748.

Travis Silva

**Travis Silva** (he/him/his)
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
415 962 8819 direct | 415 391 5400 main
tsilva@keker.com | vcard | keker.com



KEKER
VAN NEST
& PETERS

Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809

415 391 5400
keker.com

**Travis Silva**
(415) 962 8819
tsilva@keker.com

January 27, 2023

American Arbitration Association
1101 Laurel Oak Rd.
Voorhees, NJ 08043

Re:    *Bennefield v. SpinX Games Ltd.*, AAA Ref. No. 01-22-0005-2594
      *King v. SpinX Games Ltd.*, AAA Ref. No. 01-22-005-2897
      *Pyles v. SpinX Games Ltd.*, AAA Ref. No. 01-22-005-2591
      *Ross v. SpinX Games Ltd.*, AAA Ref. No. 01-22-0005-2143
      *Viel v. SpinX Games Ltd.*, AAA Ref. No. 01-22-005-2748

Dear AAA:

I write briefly to address Mr. Norris's January 17, 2023 letter.

**Rule selection.**  The law is very clear: Arbitration agreements must be enforced "'according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes and *the rules under which that arbitration will be conducted.*'"  *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (quoting *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013)) (emphasis altered).

The parties expressly agreed to the rules that would govern this arbitration: "For arbitration before AAA, for Disputes of less than $75,000, the AAA's Supplementary Procedures for Consumer-Related Disputes will apply; for Disputes involving $75,000 or more, the AAA's Commercial Arbitration Rules will apply. . . . This Provision governs in the event it conflicts with the applicable arbitration rules."  Agreement, § 18(f).  This provision is all the more reasonable given that ***none of the Claimants had to agree to arbitrate disputes with SpinX as a condition of using SpinX's products.***  The Agreement contains an arbitration opt-out provision. *Id.* § 18(e).  None of the Claimants elected to opt out.

Given this, the Commercial Arbitration Rules should apply.  Claimants do not dispute that they agreed to use the Commercial Rules in Disputes involving over $75,000.  And Claimants do not dispute that they—who seek to recover damages on behalf of SpinX users throughout entire states—believe that these Disputes might "involv[e] $75,000 or more."[1]  The parties' agreement to use the Commercial Rules under these circumstances must be honored.  *See Epic Sys.*, 138 S. Ct. at 1621.

---

[1] SpinX denies that Claimants are entitled to any recovery.

2042452

American Arbitration Association
January 27, 2023
Page 2

Seeking to avoid the terms of the contract they signed, Claimants make a series of irrelevant observations about the definition of a consumer contract and their counsel's experience litigating unnamed and unrelated matters.  None of that has anything to do with the terms of the Agreement, or the fact that these Arbitrations will involve substantial threshold issues about the Agreement's choice-of-law provision, its various class- and representative-action waivers, and potentially the Agreement's venue-selection provision.  In addition, these Arbitrations present duplicative issues and may require close case coordination.  Under these circumstances, it is more appropriate to utilize the Commercial Rules, which contain robust case-management procedures and allow the parties a say in arbitration selection.  *See* AAA Comm. R. R-12.

**San Francisco must be designated as the location of arbitration.**  The parties agreed to arbitration in San Francisco, California, at SpinX's option, so long as SpinX "agrees to pay any additional fees or costs [Claimants] incur as a result of the transfer, as determined by the arbitrator," Agreement, § 18(f).  Again, Claimants try to run away from the terms of the Agreement, but Claimants do not—and cannot—explain how holding these Arbitration in San Francisco would prejudice them.

As the Agreement makes clear, Claimants will not suffer any financial prejudice by designating San Francisco as the seat of the Arbitrations, because SpinX will agree to pay their travel expenses as determined by the arbitrator.  Agreement, § 18(f).  And the practical effect on Claimants would be minimal.  Pre-hearing conferences generally do not involve the parties and, in any event, are typically held telephonically or via videoconference.  Each Claimant would likely have to travel (if at all) just one time, to the actual arbitration hearing, which is a minimal burden that Claimants can mitigate by appearing by videoconference, if they choose to do so.

Claimants rely on Principle 7 of the AAA Consumer Due Process Protocol, but Principle 7 clearly cuts in SpinX's favor.  In relevant part, it reads: "In the case of face-to-face proceedings, the proceedings should be conducted at a location which is reasonably convenient to both parties with due consideration of their ability to travel and other pertinent circumstances."  The location must be reasonably convenient to *both parties*.  SpinX is based in China.  It is far more convenient for any of SpinX's China-based employees or other witnesses—who would under any circumstances have to travel much farther than any Claimant—to travel to California than to states on the East Coast and in the Midwest, especially if face-to-face proceedings are scheduled back-to-back to mitigate the burden of trans-Pacific travel.  Furthermore, Claimants' letter ignores the Reporter's Comments to Principle 7, which state that "Typically, contractual agreements which provide that arbitration hearings will be conducted in a particular place *are honored by the courts*."  AAA Due Process Protocol, Principle 7, Rpt. Cmt. (and citing cases) (emphasis added).  There is no reason to deviate from what is "typical" here.

//

//

American Arbitration Association
January 27, 2023
Page 3


Thank you for your attention to these matters.

Sincerely,

KEKER, VAN NEST & PETERS LLP

Travis Silva

TS:

# Exhibit E

| | |
|---|---|
| **From:** | Consumer Case Filing Team |
| **To:** | Travis Silva; Andrew Wheeler-Berliner |
| **Cc:** | Consumer Case Filing Team; ldroubi@blhny.com; Johnny Norris; Ajay Krishnan |
| **Subject:** | RE: Correspondence re Bennefield v. SpinX, AAA Ref. No. 01-22-0005-2594; King v. SpinX, AAA Ref. No. 01-22-005-2897; Pyles v. SpinX, AAA Ref. No. 01-22-005-2591; Ross v. SpinX, AAA Ref. No. 01-22-0005-2143; Viel v. SpinX, AAA Ref. No. 01-22-005-2748 |
| **Date:** | Sunday, January 29, 2023 9:42:40 AM |

Good Afternoon,

Thank you for your correspondence. At this time the respondent's objections and claimant's comments are under review. Once completed correspondence will be sent to all parties.

Thank You,
Consumer Filing Team

## Consumer Case Filing Team

T: 877 495 4185 Ext. 4646  E: ConsumerFiling@adr.org

1101 Laurel Oak Road
Suite 100, Voorhees, NJ 08043

**From:** Travis Silva <TSilva@keker.com>
**Sent:** Friday, January 27, 2023 12:02 PM
**To:** Andrew Wheeler-Berliner <Andrew@davisnorris.com>; Consumer Case Filing Team <ConsumerFiling@adr.org>
**Cc:** ldroubi@blhny.com; Johnny Norris <jnorris@davisnorris.com>; Ajay Krishnan <AKrishnan@keker.com>
**Subject:** RE: Correspondence re Bennefield v. SpinX, AAA Ref. No. 01-22-0005-2594; King v. SpinX, AAA Ref. No. 01-22-005-2897; Pyles v. SpinX, AAA Ref. No. 01-22-005-2591; Ross v. SpinX, AAA Ref. No. 01-22-0005-2143; Viel v. SpinX, AAA Ref. No. 01-22-005-2748

### *** External E-Mail – Use Caution ***

Dear AAA Consumer Filing office,

Attached is Respondent's reply to Claimants' letter sent on Jan. 17, 2023 regarding Bennefield v. SpinX, AAA Ref. No. 01-22-0005-2594; King v. SpinX, AAA Ref. No. 01-22-005-2897; Pyles v. SpinX, AAA Ref. No. 01-22-005-2591; Ross v. SpinX, AAA Ref. No. 01-22-0005-2143; Viel v. SpinX, AAA Ref. No. 01-22-005-2748. Counsel for Claimants is copied on this email.

Thank you for your attention to this matter,
Travis Silva

**Travis Silva** (he/him/his)
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
415 962 8819 direct | 415 391 5400 main
tsilva@keker.com | vcard | keker.com

---

**From:** Andrew Wheeler-Berliner <Andrew@davisnorris.com>
**Sent:** Tuesday, January 17, 2023 7:49 AM
**To:** Travis Silva <TSilva@keker.com>; consumerfiling@adr.org
**Cc:** ldroubi@blhny.com; Johnny Norris <jnorris@davisnorris.com>; Ajay Krishnan
<AKrishnan@keker.com>
**Subject:** Re: Correspondence re Bennefield v. SpinX, AAA Ref. No. 01-22-0005-2594; King v. SpinX,
AAA Ref. No. 01-22-005-2897; Pyles v. SpinX, AAA Ref. No. 01-22-005-2591; Ross v. SpinX, AAA Ref.
No. 01-22-0005-2143; Viel v. SpinX, AAA Ref. No. 01-22-005-2748

---

[EXTERNAL]

Dear AAA Consumer Filing office,

Attached is Claimants' response to SpinX's letter sent on Jan. 12, 2023 regarding Bennefield v. SpinX,
AAA Ref. No. 01-22-0005-2594; King v. SpinX, AAA Ref. No. 01-22-005-2897; Pyles v. SpinX, AAA Ref.
No. 01-22-005-2591; Ross v. SpinX, AAA Ref. No. 01-22-0005-2143; Viel v. SpinX, AAA Ref. No. 01-22-
005-2748. Counsel for Respondent is copied on this email.

Thank you for your attention to this matter,
Andrew Wheeler-Berliner

---

**From:** Travis Silva <TSilva@keker.com>
**Date:** Thursday, January 12, 2023 at 1:28 PM
**To:** "consumerfiling@adr.org" <consumerfiling@adr.org>
**Cc:** Andrew Wheeler-Berliner <Andrew@davisnorris.com>, "ldroubi@blhny.com"
<ldroubi@blhny.com>, Johnny Norris <jnorris@davisnorris.com>, Ajay Krishnan
<AKrishnan@keker.com>
**Subject:** Correspondence re Bennefield v. SpinX, AAA Ref. No. 01-22-0005-2594; King v. SpinX,
AAA Ref. No. 01-22-005-2897; Pyles v. SpinX, AAA Ref. No. 01-22-005-2591; Ross v. SpinX, AAA
Ref. No. 01-22-0005-2143; Viel v. SpinX, AAA Ref. No. 01-22-005-2748

Dear AAA Consumer Filing office,

Please find enclosed correspondence relating to Bennefield v. SpinX, AAA Ref. No. 01-22-0005-2594;

King v. SpinX, AAA Ref. No. 01-22-005-2897; Pyles v. SpinX, AAA Ref. No. 01-22-005-2591; Ross v. SpinX, AAA Ref. No. 01-22-0005-2143; Viel v. SpinX, AAA Ref. No. 01-22-005-2748.

Travis Silva

---

**Travis Silva** (he/him/his)
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
415 962 8819 direct | 415 391 5400 main
tsilva@keker.com | vcard | keker.com



1101 Laurel Oak Road
Voorhees, NJ 08043

January 29, 2023

SpinX Games Ltd.
2021 Fillmore Street #93
San Francisco, CA 94115
Via Mail

**Case Number: 01-22-0005-2748**

Thomas Viel
-vs-
SpinX Games Ltd.

Dear Parties:

The Claimant has filed with us a Demand for Arbitration. The American Arbitration Association ("AAA") has determined that this arbitration arises out of a consumer agreement and, as such, the Consumer Arbitration Rules ("Consumer Rules") apply to this dispute. The Consumer Rules may be found on our website at www.adr.org.

We note that the contract references the Commercial Arbitration Rules. According to R-1* of the Commercial Arbitration Rules, the AAA applies the Consumer Arbitration Rules to disputes arising out of consumer arbitration agreements.

Under R-12 of the Consumer Rules, businesses that provide for AAA arbitration in a consumer contract are obligated to submit their current or proposed consumer agreements to the AAA for review and inclusion on the Consumer Clause Registry ("Registry"). The AAA reviews the agreement for material compliance with the due process standards of the Consumer Due Process Protocol ("Protocol") and the Consumer Rules. The AAA's review is administrative; it is not an opinion on whether the arbitration agreement, the contract, or any part of the contract is legally enforceable, nor is it a determination regarding the arbitrability of the dispute.

This business has not previously submitted its consumer arbitration clause for review. As such, the AAA will review the clause for this matter on an expedited basis. The additional fee for this expedited review is $250, payable by the business.

**The business is also directed to submit its current consumer arbitration clause for inclusion on the Registry at** https://www.adr.org/Consumer at which time the business will also incur a $500 Registry fee. Once the business' clause is registered, it will no longer be assessed the $250 additional expedited review fee on each consumer case filed.

For cases proceeding under the Consumer Rules, the AAA reviews the relevant arbitration agreement for material compliance with the due process standards of the Consumer Due Process Protocol ("Protocol") and the Consumer Rules. The AAA's review is administrative; it is not an opinion on whether the arbitration agreement, the contract, or any part of the contract is legally enforceable, nor is it a determination regarding the arbitrability of the dispute. **We note that the arbitration provision has a material or substantial deviation from the Consumer Rules and/or Protocol. Specifically, the provision states:**

> *In the event that you select the federal judicial district that includes the address you provide in your written notification of Pre-Arbitration Claim Resolution, COMPANY may transfer the arbitration to San Francisco, California in the event that it agrees to pay any additional fees*

*or costs you incur as a result of the transfer, as determined by the arbitrator.*

**The above provision violates Principle 7: Reasonably Convenient Location**. If a party believes that there are additional conflicts with the Protocol and/or Consumer Rules, those issues may be brought before the arbitrator once one has been appointed.

However, so that we may commence administration of this matter, **we are requesting that the business waive the above provision(s) and agree to have this matter and any future consumer arbitrations filed under this agreement administered under the Consumer Rules and in compliance with the Protocol**. Please confirm your agreement to waive the above-quoted provision by signing and dating below and returning a copy of this letter. Absent receipt of the requested waiver, the AAA will decline to administer this dispute and possibly any future consumer arbitrations involving this business. Please note that pursuant to the R-1(d) of the Consumer Rules, should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution. In addition, Rule R-9 states either party may choose to take the claim to small claims court if the claim is within the jurisdiction of that court.

_____         _____
Business (authorized representative)                              Date

Under California law (the Ethics Standards for Neutral Arbitrators in Contractual Arbitration), upon the appointment of an arbitrator in consumer arbitrations, the AAA is required to disclose certain information regarding cases we have administered. Also, pursuant to the California Code of Civil Procedure section 1281.96, the AAA must collect and make available to the public information regarding our involvement in, and outcome of, consumer arbitrations.

The AAA relies on the information provided by the parties to fulfill its obligations under California law. Therefore, we ask that you take the time to review party names in the case caption (located under the case number at the top of this letter) and immediately advise me if any changes need to be made.

Pursuant to section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs. This waiver of fees does not include arbitrator fees and compensation. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. A consumer meeting these requirements must submit to the AAA a declaration under of oath regarding monthly income and the number of persons in the consumer's household. Please email me if you have any questions regarding the waiver of administrative fees.

Under the Consumer Rules, the consumer pays a filing fee of $200 and the business pays a filing fee of $300. We received the consumer's $200 portion of the filing fee. So that the filing requirements are complete, **the business is requested to submit filing fees of $300, the expedited consumer clause review fee of $250 and its arbitrator's compensation deposit of $2,500 totaling $3,050**.

**Please note payment should be submitted by credit card or electronic check. Please confirm the email address AAA may send a secured Paylink with instructions to submit payment via either method**. In the event, a check is the only method that you can provide payment, please make the check payable to the American Arbitration Association and include a reference to the case number. Checks should be mailed to 1101 Laurel Oak Road, Suite 100, Voorhees, NJ 08043. In the event that payment is being made by a third party, such as an insurance company, please request that payment be sent directly to the business' representative. The business' representative should then forward payment to the AAA in accordance with the foregoing instructions.

**The requested payment and waiver should be received no later than February 12, 2023** or the AAA may decline to administer this dispute if the business does not timely respond.

It should be noted that the consumer's satisfaction of the filing requirements triggers the business' obligation to promptly pay its share of the filing fees under the rules and the business may owe all or a portion of the filing fees even if the matter is settled or withdrawn. The AAA will refund any overpayments received from the consumer with the filing.

**This letter shall serve as the invoice pursuant to California Code of Civil Procedure section 1281. Payment is due on upon receipt of this letter. As this arbitration is subject to California Code of Civil Procedure section 1281.97, payment and waiver must be received by <u>March 14, 2023</u> or the AAA will close the parties' case. Pursuant to California Code of Civil Procedure section 1281.97, the AAA cannot grant any extensions to this payment deadline.**

Referring to Rule R-9 of the Consumer Arbitration Rules, if a party's claim is within the jurisdiction of a small claims court, either party may choose to exercise the small claims option. If either party would like this matter decided by a small claims court, please send your written request to the Consumer Filing Team and copy all other parties.

No answering statement or counterclaim is due at this time. The parties will be notified of the applicable deadlines upon satisfaction of all the filing requirements.

Thank you for your attention to this matter. If you have any questions, please contact us.

Sincerely,

Consumer Filing
Direct Dial: (877)495-4185
Email: ConsumerFiling@adr.org
Fax: (877)304-8457

cc:     Andrew Wheeler-Berliner, Esq.
        Davis Norris, LLP
        2154 Highland Avenue South
        Birmingham, AL 35205
        Via Email to: andrew@davisnorris.com

# Exhibit F

**From:** ConsumerFiling@adr.org <ConsumerFiling@adr.org>
**Sent:** Monday, February 13, 2023 9:35 AM
**To:** Ajay Krishnan <AKrishnan@keker.com>; andrew@davisnorris.com; Travis Silva <TSilva@keker.com>
**Subject:** Thomas Viel v. SpinX Games Ltd. - Case 01-22-0005-2748

[EXTERNAL]

Hello,

Please review the attached correspondence regarding the above-referenced case.

Feel free to contact me with any questions, comments or concerns you have related to this matter.

Thank you.



**Consumer Case Filing Team**

1101 Laurel Oak Road
Suite 100, Voorhees, NJ 08043
E: ConsumerFiling@adr.org



The information in this transmittal (including attachments, if any) is privileged and/or confidential and is intended only for the recipient(s) listed above. Any review, use, disclosure, distribution or copying of this transmittal is prohibited except by or on behalf of the intended recipient. If you have received this transmittal in error, please notify me immediately by reply email and destroy all copies of the transmittal. Thank you.



1101 Laurel Oak Road
Voorhees, NJ 08043

February 13, 2023

Travis Silva, Esq.
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111
Via Email to: tsilva@keker.com

**Case Number: 01-22-0005-2748**

Thomas Viel
-vs-
SpinX Games Ltd.

Dear Parties:

We have not received the administrative fees and arbitrator compensation from respondent as requested in our previous correspondence. **Respondent is requested to remit signed waiver and payment in the amount of $3050 to the AAA to be received by March 14, 2023.** As the claimant has met the filing requirements, respondent's fee is due regardless of whether the case settles or is withdrawn.

If payment was already sent, please send an email with the payment details so that payment is properly allocated. If this non-payment is simply an oversight on respondent's behalf, we trust payment will be made without delay.

**We have also not received the business' agreement to waive the deviations identified in its consumer arbitration agreement and have this and all consumer arbitrations heard in compliance with the AAA's Consumer Due Process Protocol. Respondent is requested to sign where indicated on our previous correspondence and return the signed copy to us when remitting the fees. Both payment and the signed waiver are required for the AAA to continue with administration of this dispute.**

Please note:  should the business not comply with our request by the above response date, we may decline to administer any other consumer disputes involving this business and request that the business remove the AAA name from its arbitration clause so that there is no confusion to the public regarding our decision. Furthermore, pursuant to the R-1(d) of the Consumer Arbitration Rules, should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution.

If we do not timely receive the business' portion of the filing fees, we will notify the parties that we have administratively closed this case and refund any payment received from claimant. Please note payment should be submitted by credit card or electronic check. Please confirm the email address AAA may send a secured Paylink with instructions to submit payment via either method. In the event that payment is being made by a third party, such as an insurance company, please request that payment be sent directly to the business' representative. The business' representative should then forward payment to the AAA in accordance with the foregoing instructions.

**Thank you for your attention to this matter. As this arbitration is subject to California Code of Civil Procedure 1281.97 and 1281.98, payment must be received by March 14, 2023 or the AAA will close the parties' case. The AAA will not grant any extensions to this payment deadline.**

Please email consumerfiling@adr.org if you have any questions.

Sincerely,

Consumer Filing Team
Email: ConsumerFiling@adr.org
Fax: (877)304-8457

Cc:     Andrew Wheeler-Berliner, Esq.
        Davis Norris, LLP
        2154 Highland Avenue South
        Birmingham, AL 35205
        Via Email to: andrew@davisnorris.com

# Exhibit G

| From: | Travis Silva |
|---|---|
| To: | Johnny Norris; ldroubi@blhny.com; Andrew Wheeler-Berliner |
| Cc: | Ajay Krishnan; Wes Barnett; Frank Davis |
| Subject: | RE: Viel v. SpinX, AAA No. 01-22-0005-2748 |
| Date: | Monday, March 6, 2023 11:55:00 AM |

Johnny,

Thank you for providing your position.

As to the User IDs, we will appreciate your providing them today.  We first asked for them in 2022 in response to the pre-dispute notices that you sent on behalf of some of your clients, then again in written correspondence over the past several weeks.  As I mentioned on our call last week, that information is necessary to better understand their activity on the SpinX platforms and to evaluate their claims.  Thank you.

Travis

---

**Travis Silva** (he/him/his)
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
415 962 8819 direct | 415 391 5400 main
tsilva@keker.com | vcard | keker.com

---

**From:** Johnny Norris <jnorris@davisnorris.com>
**Sent:** Friday, March 3, 2023 11:05 AM
**To:** Travis Silva <TSilva@keker.com>; ldroubi@blhny.com; Andrew Wheeler-Berliner <Andrew@davisnorris.com>
**Cc:** Ajay Krishnan <AKrishnan@keker.com>; Wes Barnett <wbarnett@davisnorris.com>; Frank Davis <fdavis@davisnorris.com>
**Subject:** RE: Viel v. SpinX, AAA No. 01-22-0005-2748

[EXTERNAL]

I've spoken with my partners and we will not consent to the proposed change of venue.  I am sure you will raise this with the arbitrator at the appropriate time, since this is a question for the arbitrator under the SpinX terms and conditions.

In the meantime, I look forward to working with you on these cases.  As we discussed, we will forward the requested user IDs as soon as we can.

Johnny

John E. Norris

Davis & Norris LLP
The Bradshaw House
2154 Highland Avenue South
Birmingham, Alabama  35205
Office: 205.930.9900
Direct: 205.541.7759

---

**From:** Travis Silva <TSilva@keker.com>
**Sent:** Friday, March 3, 2023 12:57 PM
**To:** Johnny Norris <jnorris@davisnorris.com>; ldroubi@blhny.com; Andrew Wheeler-Berliner <Andrew@davisnorris.com>
**Cc:** Ajay Krishnan <AKrishnan@keker.com>; Wes Barnett <wbarnett@davisnorris.com>; Frank Davis <fdavis@davisnorris.com>
**Subject:** RE: Viel v. SpinX, AAA No. 01-22-0005-2748

Thanks for talking today.

As discussed, if Claimants agree to San Francisco as the location of the arbitrations, SpinX will agree that the AAA Consumer Rules (including the cost provisions) would apply.  Further, SpinX will honor the cost-shifting provision of the arbitration choice-of-venue provision (sec. 18(f)).  SpinX would agree that witnesses and counsel could appear by telephone/Zoom.

You also raised the contract's choice-of-law provision (sec. 23).  SpinX will not waive the choice-of-law provision, but if you have a proposal that does not involve SpinX waiving that provision, please let us know.

Have a good weekend,
Travis

---

**Travis Silva** (he/him/his)
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
415 962 8819 direct | 415 391 5400 main
tsilva@keker.com | vcard | keker.com

---

**From:** Johnny Norris <jnorris@davisnorris.com>
**Sent:** Friday, March 3, 2023 8:35 AM
**To:** Travis Silva <TSilva@keker.com>; ldroubi@blhny.com; Andrew Wheeler-Berliner <Andrew@davisnorris.com>
**Cc:** Ajay Krishnan <AKrishnan@keker.com>; Wes Barnett <wbarnett@davisnorris.com>; Frank Davis <fdavis@davisnorris.com>
**Subject:** Re: Viel v. SpinX, AAA No. 01-22-0005-2748

**[EXTERNAL]**

Perfect. Call my direct line, which is my cell.

Sent from Outlook for iOS

**From:** Travis Silva <TSilva@keker.com>
**Sent:** Friday, March 3, 2023 10:28:11 AM
**To:** Johnny Norris <jnorris@davisnorris.com>; ldroubi@blhny.com <ldroubi@blhny.com>; Andrew Wheeler-Berliner <Andrew@davisnorris.com>
**Cc:** Ajay Krishnan <AKrishnan@keker.com>; Wes Barnett <wbarnett@davisnorris.com>; Frank Davis <fdavis@davisnorris.com>
**Subject:** Re: Viel v. SpinX, AAA No. 01-22-0005-2748

Sure—noon your time?

Travis Silva
Keker Van Nest & Peters LLP

**From:** Johnny Norris <jnorris@davisnorris.com>
**Sent:** Friday, March 3, 2023 7:30:27 AM
**To:** Travis Silva <TSilva@keker.com>; ldroubi@blhny.com <ldroubi@blhny.com>; Andrew Wheeler-Berliner <Andrew@davisnorris.com>
**Cc:** Ajay Krishnan <AKrishnan@keker.com>; Wes Barnett <wbarnett@davisnorris.com>; Frank Davis <fdavis@davisnorris.com>
**Subject:** RE: Viel v. SpinX, AAA No. 01-22-0005-2748

**[EXTERNAL]**

Travis, is there a good time today for us to get on the phone for a few minutes to discuss the issue? Thanks.

Johnny

John E. Norris
Davis & Norris LLP
The Bradshaw House
2154 Highland Avenue South
Birmingham, Alabama  35205
Office: 205.930.9900
Direct: 205.541.7759

**From:** Travis Silva <TSilva@keker.com>
**Sent:** Friday, March 3, 2023 12:59 AM
**To:** Johnny Norris <jnorris@davisnorris.com>; ldroubi@blhny.com; Andrew Wheeler-Berliner

<Andrew@davisnorris.com>
**Cc:** Ajay Krishnan <AKrishnan@keker.com>
**Subject:** RE: Viel v. SpinX, AAA No. 01-22-0005-2748

John,

First, SpinX asks that Claimants inform the AAA that they consent to arbitrate in San Francisco, as required by the arbitration agreements.

The arbitration agreements contain a venue provision allowing SpinX to designate San Francisco as the site of the arbitration, *see* Section 18(f), and there is no dispute that Claimants are parties to that agreement.  The law requires Claimants to honor their arbitration agreements, including the choice-of-venue provision in this arbitration agreement.  Arbitration agreements must be enforced "'according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes and *the rules under which that arbitration will be conducted*.'" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (quoting *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013)) (emphasis altered).  Furthermore, while SpinX contests that the AAA's "Due Process Protocol" is relevant to this issue, SpinX believes that San Francisco *is* a "reasonable location" within the meaning of Principle 7 of that Protocol.  Principle 7 states that face-to-face proceedings "should be conducted at a location which is reasonably convenient to both parties with due consideration of their ability to travel and other pertinent circumstances."  While any of SpinX's China-based employees who testify will have to undertake substantial travel to come to an arbitration hearing, it is obviously easier for them to travel to one West Coast location rather than five different locations, some of which are not near international airports and all of which are on the East Coast or in the Midwest.  Such an arrangement would be fair to both parties, especially in light of the cost-shifting provision cited above.

SpinX is considering its options in the event that Claimants do not consent to arbitrate in San Francisco, including the possibility of seeking judicial intervention.

Given the deadlines set by the AAA, please let us know your clients' position regarding the forum selection issue by tomorrow, March 3.

Second, SpinX requests that you send us the User IDs of your clients, which include Claimants Bennefield, King, Pyles, Ross, and Viel.  In the pre-dispute correspondence, we asked you to provide your clients' User IDs, which are a series of between 5-8 numbers, and I reiterated that request below.  You still have not sent us this information, which should be readily available to your clients.  SpinX needs that information to look up your clients' activity on SpinX's platform, and we'll need that information to move these cases forward.  We would appreciate receiving these User IDs tomorrow, as well.

Thank you
Travis

**Travis Silva** (he/him/his)

Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
415 962 8819 direct | 415 391 5400 main
tsilva@keker.com | vcard | keker.com

---

**From:** Johnny Norris <jnorris@davisnorris.com>
**Sent:** Thursday, March 2, 2023 2:19 PM
**To:** Travis Silva <TSilva@keker.com>; ldroubi@blhny.com; Andrew Wheeler-Berliner <Andrew@davisnorris.com>
**Cc:** Ajay Krishnan <AKrishnan@keker.com>
**Subject:** Re: Viel v. SpinX, AAA No. 01-22-0005-2748

---

[EXTERNAL]

---

Travis, in the confusion of this email thread, I'm not clear what 'this issue" is.  There were a couple matters addressed by the AAA.  If you would clarify I would appreciate it.

John E. Norris
Davis & Norris LLP
The Bradshaw House
2154 Highland Avenue South
Birmingham, Alabama 35205
(205) 930-9900
Fax: (205) 930-9989

---

**From:** Travis Silva <TSilva@keker.com>
**Sent:** Thursday, March 2, 2023 2:35:19 PM
**To:** ldroubi@blhny.com <ldroubi@blhny.com>; Johnny Norris <jnorris@davisnorris.com>; Andrew Wheeler-Berliner <Andrew@davisnorris.com>
**Cc:** Ajay Krishnan <AKrishnan@keker.com>
**Subject:** RE: Viel v. SpinX, AAA No. 01-22-0005-2748

Johnny, Andrew:

In light of AAA's correspondence, please provide your position regarding this issue tomorrow.

Separately, you have not provided us with your clients' SpinX user IDs, which we requested in the course of the pre-dispute correspondence.  These are a string of numbers (5-8 digits long, not email addresses).  Please provide us this information by tomorrow so that we can better understand your clients' use of SpinX's products.

Thank you,
Travis

**Travis Silva** (he/him/his)
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
415 962 8819 direct | 415 391 5400 main
tsilva@keker.com | vcard | keker.com

---

**From:** Travis Silva <TSilva@keker.com>
**Sent:** Friday, February 10, 2023 7:40 PM
**To:** ldroubi@blhny.com; Johnny Norris <jnorris@davisnorris.com>; Andrew Wheeler-Berliner
<Andrew@davisnorris.com>
**Cc:** Ajay Krishnan <AKrishnan@keker.com>
**Subject:** Viel v. SpinX, AAA No. 01-22-0005-2748

Counsel—

I write regarding these arbitrations, filed by your law firm:

- *Bennefield v. SpinX Games Ltd.*, AAA Ref. No. 01-22-0005-2594
- *Pyles v. SpinX Games Ltd.*, AAA Ref. No. 01-22-0005-2591
- *Ross v. SpinX Games Ltd.*, AAA Ref. No. 01-22-0005-2143
- *Viel v. SpinX Games Ltd.*, AAA Ref. No. 01-22-0005-2748

As you know, the parties' arbitration agreement contains a choice-of-venue provision allowing SpinX to select San Francisco as the location of the arbitration "in the event that it agrees to pay any additional fees or costs you incur as a result of the transfer, as determined by the Arbitrator."  On January 12, 2023, SpinX informed the AAA that it elected to designate San Francisco as the location of the arbitration and agreed to abide by the terms of the venue provision regarding fees or costs. Additionally, on January 25, I spoke with Mr. Norris to discuss various pre-initiation issues; during our discussion, I asked that Claimants abide by their agreement to arbitrate in San Francisco. Subsequently, the AAA asked SpinX to waive its contractual right to select San Francisco as the location of the arbitration.

SpinX asks that Claimants inform the AAA that they consent to arbitrate in San Francisco, as required by the arbitration agreements.  The law requires Claimants to honor their arbitration agreements, including the choice-of venue provision in this arbitration agreement.  Arbitration agreements must be enforced "'according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes and *the rules under which that arbitration will be conducted*.'" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (quoting *American Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013)) (emphasis altered).  Furthermore, while SpinX contests that the AAA's "Due Process Protocol" is relevant to this issue, SpinX believes that San Francisco *is* a "reasonable location" within the meaning of Principle 7 of that Protocol.  Principle 7 states that face-to-face proceedings "should be conducted at a location which is reasonably convenient to both parties with

due consideration of their ability to travel and other pertinent circumstances." While any of SpinX's China-based employees who testify will have to undertake substantial travel to come to an arbitration hearing, it is obviously easier for them to travel to one West Coast location rather than five different locations, some of which are not near international airports and all of which are on the East Coast or in the Midwest. Such an arrangement would be fair to both parties, especially in light of the cost-shifting provision cited above.

Given the deadlines imposed by the AAA, and the AAA's silence in the face of two requests for extensions of that deadline, we ask for an answer from Mr. Viel on Monday, February 13 and from Mr. Bennefield, Ms. Pyles, and Ms. Ross by Friday, February 17.

Sincerely,
Travis Silva

**Travis Silva** (he/him/his)
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
415 962 8819 direct | 415 391 5400 main
tsilva@keker.com | vcard | keker.com

# Exhibit H

| | |
|---|---|
| **From:** | noreply@adr.org |
| **To:** | Sandy Giminez |
| **Subject:** | Payment Received on AAA Case 01-22-0005-2748 |
| **Date:** | Friday, March 3, 2023 11:47:46 AM |

**[EXTERNAL]**

Thank you for making the following payment to the American Arbitration Association:

> Transaction ID: 054818
> Case Number: 01-22-0005-2748
> Party: SpinX Games Ltd.
> Amount: $3,050.00
> Comments: Initial Payment

**Please do not reply to this email.** If you have any questions about this payment, please contact Consumer Filing at ConsumerFiling@adr.org.

Thank you.