1  KEKER, VAN NEST & PETERS LLP
   MICHELLE YBARRA - # 260697
2  mybarra@keker.com
   MATAN SHACHAM - # 262348
3  mshacham@keker.com
   TRAVIS SILVA - # 295856
4  tsilva@keker.com
   ROBYN PARISER - # 335017
5  rpariser@keker.com
   633 Battery Street
6  San Francisco, CA 94111-1809
   Telephone:     415 391 5400
7  Facsimile:     415 397 7188

8  Attorneys for Petitioner SPINX GAMES, LTD.

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                       SAN FRANCISCO DIVISION

12 | SPINX GAMES, LTD., | Case No. 3:23-cv-01337-WHO
13 | Petitioner, | Related Case Nos. 3:23-cv-01338-WHO; 3:23-cv-01339-WHO; 3:23-cv-01340-WHO; 3:23-cv-01485-WHO
14 | v. |
15 | THOMAS VIEL, |
16 | Respondent. | **PETITIONER SPINX GAMES, LTD.'S CONSOLIDATED REPLY IN SUPPORT OF SPINX'S PETITION TO COMPEL ARBITRATION (DKT. 7) AND OPPOSITION TO RESPONDENT'S CROSS-PETITION TO COMPEL ARBITRATION (DKT. 23)**
   | | Date:      May 10, 2023
   | | Time:      2:00 PM
   | | Dept.:     Courtroom 2, 17th Floor
   | | Judge:     Hon. William H. Orrick
   | | Date Filed: March 8, 2023
   | | Trial Date: None Set

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................1

II.  ARGUMENT .......................................................................................................................2

    A.   Respondent failed to counter any arguments set forth in SpinX's opening papers. ......................................................................................................................2

    B.   Respondent's delegation-clause arguments ignore the practical effects of Respondent's conduct and the AAA's handling of the arbitration demand. ...........4

    C.   Respondent's delegation-clause arguments are legally baseless. ...........................5

    D.   The Court lacks jurisdiction to compel SpinX to arbitrate in Massachusetts. .........7

    E.   Respondent's Cross-Petition and "Reply" to this Opposition are an improper attempt to obtain a surreply to SpinX's Petition. .....................................9

III. CONCLUSION....................................................................................................................9

i

PETITIONER SPINX GAMES, LTD.'S CONSOLIDATED REPLY IN SUPPORT OF SPINX'S PETITION TO COMPEL ARBITRATION (DKT. 7) AND OPPOSITION TO RESPONDENT'S CROSS-PETITION TO COMPEL ARBITRATION (DKT. 23)
Case No. 3:23-cv-01337-WHO

2112028

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Beauperthuy v. 24 Hour Fitness USA, Inc.*,
  No. 06-715- SC, 2011 WL 6014438 (N.D. Cal. Dec. 2, 2011) ..................................2, 3, 5, 7

*Caremark, LLC v. Chickasaw Nation*,
  43 F.4th 1021 (9th Cir. 2022) ...........................................................................................5

*Cont'l Grain Co. v. Dant & Russell*,
  118 F.2d 967 (9th Cir. 1941) .............................................................................................8

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018)................................................................................................2, 3, 7

*Garcia v. Biter*,
  195 F. Supp. 3d 1131 (E.D. Cal. 2016)..............................................................................9

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  139 S. Ct. 524 (2019) ........................................................................................................5

*Mgmt. Recruiters Int'l, Inc. v. Bloor*,
  129 F.3d 851 (6th Cir. 1997) ....................................................................................2, 3, 5, 7

*P & P Indus., Inc. v. Sutter Corp.*,
  179 F.3d 861 (10th Cir.1999) ............................................................................................6

*Puri v. Golden Temple of Oregon, LLC*,
  No. CV 10-882-JFW, 2010 WL 11595757 (C.D. Cal. June 9, 2010)................................8

*Rent-A-Ctr., W., Inc. v. Jackson*,
  561 U.S. 63 (2010).............................................................................................................5

*Snyder v. Smith*,
  736 F.2d 409 (7th Cir. 1984), overruled in part on other grounds by *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) .............................................................................7

*Thomas v. Facebook, Inc.*,
  No. 118CV00856LJOBAM, 2018 WL 3915585 (E.D. Cal. Aug. 15, 2018) ....................8

*In re Verisign, Inc., Derivative Litig.*,
  531 F. Supp. 2d 1173 (N.D. Cal. 2007) .............................................................................3

**Statutes**

9 U.S.C. § 4........................................................................................................................3, 7, 8

ii

PETITIONER SPINX GAMES, LTD.'S CONSOLIDATED REPLY IN SUPPORT OF SPINX'S PETITION TO COMPEL ARBITRATION (DKT. 7) AND OPPOSITION TO RESPONDENT'S CROSS-PETITION TO COMPEL ARBITRATION (DKT. 23)
Case No. 3:23-cv-01337-WHO

2112028

**Other Authorities**

Civ. Local Rule 7-3(d) ..................................................................................................................9

I. **INTRODUCTION**

Respondent[1] admits that he assented to the arbitration agreement ("Agreement") included in the Terms of Service and that his claims belong in arbitration. He admits that the Agreement is valid, and therefore enforceable. He does not assert that it is unconscionable in any way. He also admits that the Agreement includes a clear Arbitration-Venue Provision, under which he expressly agreed that SpinX "may transfer the arbitration to San Francisco, California." Respondent does not explain how the Agreement could be read in any way other than to require arbitration in San Francisco. He does not dispute that San Francisco would be a fair, reasonable forum. He also does not dispute that SpinX will be irreparably harmed if Respondent and others were able to disregard the venue provision, and he offers no explanation for how he would be harmed if required to arbitrate in San Francisco. Indeed, Respondent fails to respond to *any* argument or *any* legal authority that SpinX presented in its memorandum, Dkt. No. 7 ("MPA"), in support of its Petition, Dkt. No. 1 ("Pet.").

Instead, in both his Opposition to SpinX's Petition, Dkt. No. 21 ("Opp."), and his virtually identical Cross-Petition to Compel Arbitration before the American Arbitration Association, Dkt. No. 23 ("Cross-Pet."), Respondent offers just one argument: "the dispute between the parties as to where the arbitration should be held is a matter to be resolved by the arbitrator." Opp. at 3; Cross-Pet. at 4. In other words, unable to offer any explanation for how he could win on the merits, Respondent instead argues that the Court has no power to rule on the issue at all. This argument fails for two reasons. First, as Respondent knows, the dispute over venue cannot be submitted to an AAA arbitrator. The AAA demanded that SpinX *waive* its rights under the Arbitration-Venue provision, making waiver of SpinX's right to arbitrate in San Francisco a precondition to any AAA arbitration. Consequently, the venue dispute cannot be submitted to an arbitrator because the only way the AAA will ever appoint an arbitrator is if SpinX gives up its venue right in the first place. Respondent does not dispute this. Second, Respondent fails to

---

[1] Unless otherwise noted, defined terms in this brief parallel terms defined in SpinX's MPA, Dkt. No. 7.

provide *any* legal precedent bearing on the facts here to support his argument, and he misconstrues both the AAA Rules and the terms of the Agreement itself.

Where a valid arbitration agreement exists that encompasses the claims in dispute, and one party refuses to arbitrate according to terms of the agreement, the FAA "requires courts rigorously to enforce arbitration agreements ***according to their terms***." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (internal quotation omitted, emphasis added). Here, there is no dispute that a valid arbitration agreement exists or that Respondent is refusing to arbitrate according to its terms. This Court should therefore issue an order compelling Respondent to submit to arbitration in San Francisco, as other courts have done in similar situations. *See Mgmt. Recruiters Int'l, Inc. v. Bloor*, 129 F.3d 851, 852 (6th Cir. 1997); *Beauperthuy v. 24 Hour Fitness USA, Inc.*, No. 06-715- SC, 2011 WL 6014438, at *1 (N.D. Cal. Dec. 2, 2011).

## II.     ARGUMENT

### A.     Respondent failed to counter any arguments set forth in SpinX's opening papers.

Respondent's Opposition contains page after page of concession. First, Respondent admits that "the underlying claims [in this case] belong in arbitration pursuant to the SpinX 'Terms of Service.'" Cross-Pet. at 2; Opp. at 1 ("the underlying claim [in this case] belongs in arbitration pursuant to the SpinX 'Terms of Service.'"). Thus, unlike in most motion-to-compel-arbitration scenarios, the parties agree that this case belongs in arbitration. The only question here is where the arbitration will take place.

Next, Respondent admits that he signed a contract including the Arbitration-Venue Provision specifying that SpinX could transfer the arbitration to San Francisco if it agreed to pay Respondent's reasonable fees as determined by the arbitrator, and, further, that the Arbitration-Venue Provision contains the exact text as set out in SpinX's Petition. *See* Opp. at 2; Cross-Pet. at 3; Pet. at 4. He does not dispute that the Agreement is generally valid and enforceable under the FAA. *See* MPA at 7-10. He does not dispute that the Arbitration-Venue Provision is valid and enforceable under the FAA, or that both federal and California law would uphold the parties' choice of San Francisco as the venue if this dispute were about court litigation. *See id*. at 11-17.

2

PETITIONER SPINX GAMES, LTD.'S CONSOLIDATED REPLY IN SUPPORT OF SPINX'S PETITION TO COMPEL ARBITRATION (DKT. 7) AND OPPOSITION TO RESPONDENT'S CROSS-PETITION TO COMPEL ARBITRATION (DKT. 23)
Case No. 3:23-cv-01337-WHO

2112028

And Respondent does not dispute that the FAA governs this Court's disposition of the Petition. *See generally id*. at 7-17.

Critically, Respondent also does not dispute that he is refusing to arbitrate within the meaning of the FAA, and he fails to mention—let alone distinguish—SpinX's cases in this point. *See id*. at 13.  SpinX's MPA cites the Sixth Circuit's decision in *Bloor*, 129 F.3d 851, and this District's order in *Beauperthuy*, 2011 WL 6014438, at *1, as analogous cases in which courts deemed conduct such as Respondent's to be a "refusal" within the meaning of Section 4.  *See* MPA at 13.  Respondent does not try to explain (because he can't) why the Sixth Circuit was wrong when, in *Bloor*, it compelled the respondent to arbitrate in Ohio, according to the terms of a contractual venue agreement, instead of in Washington, where the respondent demanded arbitration.  And Respondent does not try to explain (again, because he can't) why this District was wrong in *Beauperthuy* to compel arbitration to occur in the location agreed-upon by the parties.  Because Respondent, like the litigants in those cases, is refusing to arbitrate, the FAA requires that the Court "**shall** make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4 (emphasis added).

As the Supreme Court explained in *Epic Systems*, "the Arbitration Act requires courts rigorously to enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted."  138 S. Ct. at 1621 (internal citation omitted).  Here, the "terms" and "rules" of the Agreement unequivocally (and without dispute) specify that the arbitration is to occur in San Francisco.  This Court must therefore enforce the Agreement "according to [its] terms" and compel Respondent to submit to arbitration in San Francisco.  *See id*.; *see also In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1222 (N.D. Cal. 2007) ("The FAA eliminates district court discretion and requires the court to compel arbitration of issues covered by the arbitration agreement.") *citing Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

**B.    Respondent's delegation-clause arguments ignore the practical effects of Respondent's conduct and the AAA's handling of the arbitration demand.**

Unable to answer any of SpinX's legal arguments, Respondent resorts to arguing that this Court cannot decide this issue at all because the Agreement contains a delegation clause. This argument ignores the uncontested facts surrounding how Respondent and the AAA have handled the dispute over the Arbitration-Venue Provision.

The delegation clause is irrelevant here because no AAA arbitrator will ever hear or decide the instant venue dispute. Respondent and the AAA precluded that. The AAA's "Consumer Filing" desk demanded that SpinX waive its rights under the Arbitration-Venue Provision as a pre-condition to commencing the arbitration. *See* MPA at 6; Dkt. 7-2, Exs. E and F. Thus, there is only one scenario in which the AAA appoints an arbitrator—and that scenario necessarily involves SpinX waiving its right to arbitrate in San Francisco before the arbitration's commencement. If SpinX were to waive that right, it could not later "unwaive" it in a motion to transfer filed with the arbitrator. And, for the same reason, SpinX would be unable to later obtain judicial review on this issue because there would be no arbitral decision to challenge. Respondent's invocation of the delegation clause is thus nonsensical.

In fact, Respondent is to blame for this situation. SpinX articulated this dilemma to Respondent and asked Respondent to consent to arbitration in San Francisco. *See* Dkt. No. 7-2, Ex. G. Respondent could have resolved this issue by telling the AAA that he consented to arbitrate in San Francisco, as he agreed to do when he (concededly) signed the SpinX Terms of Service. But Respondent refused, in both the colloquial and the technical, Section-4 senses of that term. *See id.*; *see also id.*, Ex. C.

Respondent's also asserts that the "AAA has already begun its administration" of this matter. *See* Opp. at 2; Cross-Pet. at 2. But even if that mattered, it isn't right. In the AAA's own words, it will not "commence administration of this matter" unless SpinX waives the Arbitration-Venue Provision. Dkt. No. 7-2, Exs. E and F ("so that we may commence administration of this matter, we are requesting that [SpinX] waive the [Arbitration-Venue Provision]. . . . Absent receipt of the requested waiver, the AAA will decline to administer this dispute"). Indeed, the

AAA's conduct demonstrates that the arbitration has not started. The AAA's correspondence in this matter thus far has come from an unidentified person or persons signing for the AAA's "Consumer Filing" desk. *See id.*, Exs. E and F ("Sincerely, Consumer Filing"). There's no indication that a licensed lawyer has reviewed the case file. No arbitrator has been appointed. The AAA has not set a deadline for SpinX to respond to Respondent's arbitration demand, nor has SpinX filed any such response. The AAA has not scheduled any administrative conferences. There is no case schedule. Simply put, there is no arbitration at this point in time.

## C. Respondent's delegation-clause arguments are legally baseless.

Even if Respondent's delegation clause arguments had any application to the facts of this dispute, they fail because they are legally baseless.

First, none of the cases cited by Respondent stand for the proposition that a court cannot remedy a refusal to arbitrate in an agreed-upon venue (as the courts in *Bloor* and *Beauperthuy* did) merely because an arbitration agreement contains a delegation clause. *See* Opp. at 6; Cross-Pet. at 7. Indeed, none of those cases involve enforcement of venue provisions. Rather, those cases stand for the proposition that parties may agree to delegate to the arbitrator certain issues such as arbitrability or unconscionability, where there is "clear and unmistakable" evidence of the parties' intent to do so. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530-31 (2019); *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1028 (9th Cir. 2022); *see generally Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63 (2010).

Here, Respondent does not point to any support for the proposition that the parties agreed to delegate to the arbitrator the decision of how to apply the Agreement's venue provision. To the contrary, as Respondent acknowledges, what the delegation clause says is that an arbitrator may decide the "validity, enforceability or scope" of the arbitration provision—it makes no reference to venue. *See* Opp. at 4; Cross-Pet. at 5. And it would make no sense for the Agreement to delegate the venue decision to the arbitrator, because the Agreement explicitly provides that venue must be in San Francisco. *See* Agreement § 18(f).

Second, contrary to Respondent's argument, the AAA Rules do not provide that an

arbitrator must decide this venue dispute. *See* Opp. at 4-5; Cross-Pet. at 5-6. To begin with, Respondent's argument depends on the assumption that the AAA's Consumer Rules apply here; but the Agreement provides that the AAA Commercial Rules apply here.[2] *See* Agreement § 18(f). Even if the Consumer Rules do apply, he misconstrues them. As Respondent acknowledges, AAA Consumer Arbitration Rule R-11 states that the AAA will determine the locale of the arbitration "*if the parties do not agree to the local where the hearing is to be held. . . . If a party does not agree with the AAA's decision, that party can ask the arbitrator, once appointed, to make a final determination.*" *See* Opp. at 4; Cross-Pet. at 5 (emphasis added). But the parties *did agree* to the locale—Respondent signed a contract agreeing that SpinX could transfer the arbitration to San Francisco—so Rule R-11 is inapplicable here. The same can be said about Principle 7 of the AAA Consumer Due Process Protocol. ("*If the parties are unable to agree on a location*, the determination should be made by the independent ADR Institution or the Neutral." (emphasis added)). Further, the section of Rule R-11 indicating that an arbitrator may make a final venue determination in certain circumstances (which are not present here, because the parties agreed to a locale in their binding contract) is also inapplicable: as discussed above, an arbitrator will never make a final determination here because the AAA is requiring SpinX to waive the Arbitration-Venue Provision *before* it will appoint an arbitrator.

  Regardless of whichever AAA rules apply, the parties agreed that the terms of the Agreement prevail wherever they conflict with AAA rules. *See* Agreement § 18(f) ("This Provision governs in the event it conflicts with applicable arbitration rules."). Respondent does not dispute that this provision is binding. Further, parties can and routinely do contract to modify the default rules of arbitral tribunals. *See, e.g., P & P Indus., Inc. v. Sutter Corp.,* 179 F.3d 861, 867–68 (10th Cir.1999) ("A party who consents by contract to arbitration before the AAA also consents to be bound by the procedural rules of the AAA, unless that party indicates otherwise in

---

[2] While the AAA has ignored the terms of the parties' Agreement and determined that the Consumer Rules apply to Respondent's claims, the AAA acknowledges that its decision is merely "administrative." *See* Dkt. 7-2, Ex. E. SpinX disputes this administrative finding and reserves its rights to challenge this finding if and when an AAA arbitrator is ever appointed in this matter.

the contract."). Even the AAA acknowledges that parties may modify their default rules and procedures. *See* American Arbitration Association, "Drafting Dispute Resolution Clauses: A Practical Guide" (2013) ("The parties are free to customize and refine the basic arbitration procedures to meet their particular needs. If the parties agree on a procedure that conflicts with otherwise applicable AAA rules, the AAA will almost always respect the wishes of the parties.").

As SpinX explained in its moving papers, this Court can and should enforce the Arbitration-Venue Provision, which Respondent admits he agreed to, does not dispute allows SpinX to transfer the arbitration to San Francisco, and does not dispute is binding. *See, e.g., Snyder v. Smith*, 736 F.2d 409, 419 (7th Cir. 1984), overruled in part on other grounds by *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *Recruiters Int'l, Inc. v. Bloor*, 129 F.3d 851 (6th Cir. 1997); *Beauperthuy v. 24 Hour Fitness USA, Inc.*, No. 06-715 SC, 2011 WL 6014438 (N.D. Cal. Dec. 2, 2011). Any contrary finding would allow Respondent to evade the terms of the Agreement to which he assented and force SpinX to resolve this dispute according to terms that it did not agree to. This is exactly what the FAA was designed to avoid. *See Epic Sys.*, 138 S. Ct. at 1621 ("Not only did Congress require courts to respect and enforce agreements to arbitrate; it also specifically directed them to respect and enforce the parties' chosen arbitration procedures. . . . Indeed, we have often observed that the Arbitration Act requires courts rigorously to enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted." (internal citations and marks removed)).

**D.   The Court lacks jurisdiction to compel SpinX to arbitrate in Massachusetts.**

Respondent filed a Cross-Petition seeking to compel SpinX to arbitrate before the AAA. Presumably, this is Respondent's way of trying to obtain an order requiring SpinX to waive the Arbitration-Venue Provision and arbitrate in Respondent's chosen venue—Oxford, Massachusetts. Respondent's Cross-Petition must be denied because this Court lacks jurisdiction to compel the parties to arbitrate outside of this District.

Section 4 of the FAA provides:

7

PETITIONER SPINX GAMES, LTD.'S CONSOLIDATED REPLY IN SUPPORT OF SPINX'S PETITION TO COMPEL ARBITRATION (DKT. 7) AND OPPOSITION TO RESPONDENT'S CROSS-PETITION TO COMPEL ARBITRATION (DKT. 23)
Case No. 3:23-cv-01337-WHO

2112028

> [U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, ***shall be within the district in which the petition for an order directing such arbitration is filed***.

9 U.S.C. § 4 (emphasis added).  The Ninth Circuit has made clear that the text emphasized above means what it says: the FAA "expressly provides that the hearing and proceeding shall be within the district in which the petition for the order directing the arbitration is filed." *Cont'l Grain Co. v. Dant & Russell*, 118 F.2d 967, 968 (9th Cir. 1941).  Respondent's Cross-Petition must thus be denied.  *See Puri v. Golden Temple of Oregon, LLC*, No. CV 10-882-JFW (VBKX), 2010 WL 11595757, at *4 (C.D. Cal. June 9, 2010) (dismissing action because plaintiffs moved to compel arbitration in California and the terms of the arbitration agreement required the parties to arbitrate in Portland, Oregon).

In fact, the Cross-Petition provides yet another reason for this Court to compel arbitration in San Francisco.  In addition to the Arbitration-Venue Provision at issue, the Agreement contains a second venue provision, specifying that federal and state courts in San Francisco shall have exclusive jurisdiction and be the exclusive venue for any court litigation between the parties.  *See* Dkt. 7-1, Ex. A § 23.  Federal courts routinely uphold such venue-selection clauses, including venue-selection clauses set forth in Terms of Service agreements between Internet-based companies and the people who consume their services.  MPA. at 14-15; *see also, e.g., Thomas v. Facebook, Inc.*, No. 118CV00856LJOBAM, 2018 WL 3915585, at *4 (E.D. Cal. Aug. 15, 2018) (upholding venue-selection clause in Facebook's terms of service and transferring case to the Northern District of California because "courts routinely uphold forum selection clauses in form contracts between consumers and businesses." (internal citation omitted)).  Respondent's decision to file his Cross-Petition in this Court demonstrates his understanding that there is an agreement between these parties to litigate in San Francisco.  Because the FAA allows courts to compel arbitration only in the judicial district where proceedings are brought, and because in-court disputes between these parties must be litigated in courts that embrace San Francisco, any order compelling arbitration must specify that that arbitration will occur in San Francisco.

**E.     Respondent's Cross-Petition and "Reply" to this Opposition are an improper attempt to obtain a surreply to SpinX's Petition.**

The Cross-Petition is a cut-and-paste job. It fails to raise any new arguments or provide any new legal authority, and so it is duplicative of Respondent's Opposition. For that reason, and in the interest of judicial economy, SpinX agreed to file this consolidated document as its Reply on SpinX's Petition as well as its Opposition to Respondent's Cross-Petition. *See* Dkt. No. 27.

The Court should see the redundant Cross-Petition for what it is—an effort to obtain the ability to file a surreply to SpinX's opening papers without seeking leave from the Court. This Court's rules forbid this. *See* Civil Local Rule 7-3(d) ("Once a reply is filed, no additional memoranda, papers or letters may be filed without prior Court approval" unless objecting to new evidence in opposing reply brief or notifying the court of a new, relevant judicial opinion); *see also Garcia v. Biter*, 195 F. Supp. 3d 1131, 1133 (E.D. Cal. 2016) ("Parties do not have the right to file surreplies . . . ."). The Court should ignore (or *sua sponte* strike) Respondent's "Reply" to this "Opposition," and the Court should certainly ignore any new arguments raised for the first time on surreply.

## III.    CONCLUSION

For the reasons stated herein, SpinX respectfully requests that the Court compel Respondent to arbitrate his claims in San Francisco.

Dated:  April 12, 2023                                              KEKER, VAN NEST & PETERS LLP

                                                                    By:  */s/ Michelle Ybarra*
                                                                         MICHELLE YBARRA
                                                                         MATAN SHACHAM
                                                                         TRAVIS SILVA
                                                                         ROBYN PARISER

                                                                         Attorneys for Petitioner SPINX GAMES, LTD.

9

PETITIONER SPINX GAMES, LTD.'S CONSOLIDATED REPLY IN SUPPORT OF SPINX'S PETITION TO COMPEL ARBITRATION (DKT. 7) AND OPPOSITION TO RESPONDENT'S CROSS-PETITION TO COMPEL ARBITRATION (DKT. 23)
Case No. 3:23-cv-01337-WHO

2112028