UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE CROSS-PETITIONS TO COMPEL ARBITRATION<br><br>SPINX GAMES, LTD.,<br><br>Plaintiff,<br><br>v.<br><br>THOMAS VIEL, JOSHUA BENNEFIELD, CARISSA PYLES, BRITNEY ROSS, SHARON KING<br><br>Defendants. | Case No. 23-cv-01337-WHO (Dkt. Nos. 7, 23)<br>3:23-cv-01338-WHO (Dkt. Nos. 6, 22)<br>3:23-cv-01339-WHO (Dkt. Nos. 7, 24)<br>3:23-cv-01340-WHO (Dkt. Nos. 6, 21)<br>3:23-cv-01485-WHO (Dkt. Nos. 7, 14)<br><br>**ORDER DENYING CROSS-MOTIONS TO COMPEL ARBITRATION** |

Petitioner SpinX Games, Ltd. ("Petitioner" or "SpinX") and Respondents Thomas Viel, Carrisa Pyles, Britney Ross, Joshua Bennefield, and Sharon King ("Respondents") bring cross-motions to compel arbitration. The parties agree that their arbitration agreement is valid and contains a broad delegation clause placing all decisions in the hands of the arbitrator. The parties further agree that this dispute would be moot if they are allowed to proceed with arbitration virtually or telephonically. Their failure to explore whether AAA or JAMS would allow the remote proceedings before coming to court is inexplicable. But if they are incapable of resolving this dispute on their own, they should seek relief in the courts having jurisdiction over the arbitrations at issue. That does not include the United States District Court for the Northern District of California. For the reasons set forth below, and on the record, both motions are **DENIED**.

**BACKGROUND**

SpinX puts out "social casino" games—modeled after slot machines—for mobile devices. SpinX notes that "in the current version of the apps, virtual coins are automatically replenished by SpinX whenever a player's balance reaches zero, so it is not necessary to purchase virtual coins to play SpinX's apps." Mot. [Dkt. 7] at 1:7-10. Nonetheless, players are allowed to purchase virtual coins (which have no value and cannot be redeemed for cash or prizes).

Thomas Viel, Carrisa Pyles, Britney Ross, Joshua Bennefield, and Sharon King ("Respondents") are SpinX customers who each filed an arbitration demand through AAA in their state of residence: Massachusetts, Kentucky, Ohio, Georgia, and New Jersey respectively. Viel and Ross do not specify an amount in controversy in their arbitration demands. Bennefield, King, and Pyles allege that they paid "hundreds or thousands of dollars to SpinX" for virtual coins and seek to recover their losses pursuant to state illegal gambling laws.

By playing SpinX's games, customers agree to SpinX's Terms of Service, which include an arbitration provision. The parties acknowledge that the arbitration provision is valid and governs their substantive disputes. The Terms of Service contains: (1) a choice of venue provision relating to arbitration, which permits SpinX to transfer an arbitration to San Francisco if a customer selects a different location ("arbitration-venue" provision), and (2) a broad delegation clause providing that any and all disputes are to be resolved exclusively and finally by binding arbitration before the American Arbitration Association ("AAA") or JAMS. The arbitration-venue provision provides:

> **Location of Arbitration.** For Disputes between the COMPANY and users who are residents of the United States, you or COMPANY may initiate arbitration in either San Francisco, California or the federal judicial district that includes the address you provide in your written notification of Pre-Arbitration Claim Resolution. In the event that you select the federal judicial district that includes the address you provide in your written notification of Pre-Arbitration Claim Resolution, COMPANY may transfer the arbitration to San Francisco, California in the event that it agrees to pay any additional fees or costs you incur as a result of the transfer, as determined by the arbitrator.

2

Terms of Service [Dkt. 7-2] Ex. B § 18(f) (emphasis in original).

The delegation clause provides that:

> YOU AND COMPANY AGREE THAT, EXCEPT AS PROVIDED BELOW, ANY AND ALL DISPUTES, AS DEFINED ABOVE . . . WILL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION

*Id.* § 18(b) (emphasis in original).

After Respondents filed their arbitration demands, SpinX attempted to transfer these arbitrations to San Francisco pursuant to the arbitration-venue provision. However, AAA's "Consumer Filing" desk administratively denied this request and has declined to designate an arbitrator to oversee each case until and unless SpinX waives its choice of venue provision and agrees to proceed in the various states in which the arbitration demands were made. MPA [Dkt. 7-2], Exs. E and F. This appears to be because AAA's consumer dispute policies provide that "in a face-to-face proceeding, the proceeding should be conducted at a location which is reasonably convenient to both parties with due consideration of their ability to travel and other pertinent circumstances." Principle 7 of the AAA Consumer Due Process Protocol.[1] SpinX then requested that Respondents inform AAA that they consent to arbitrate in San Francisco, which Respondents declined to do. *Id.* Ex. G.

Respondents claim that SpinX has not asked AAA to send the venue selection issue to an arbitrator, and that Respondents would have agreed to resolve this dispute before an arbitrator. Instead, SpinX has filed petitions to compel arbitration in San Francisco for each of the five Respondents. Respondents each filed identical oppositions and filed cross-motions to compel arbitration which largely mirrored their oppositions. SpinX then filed one consolidated reply in support of its petition to compel arbitration and opposition to Respondents' cross-motion to compel arbitration, and Respondents filed one consolidated reply in support of their cross-petition to compel arbitration. The parties also represented that they are willing to proceed with arbitration

---

[1] The Arbitration agreement requires SpinX to "pay any additional fees or costs [the customer] incur[s] as a result of the transfer, as determined by the arbitrator" in the event SpinX transfers the arbitration to San Francisco. Terms of Service § 18(f).

1    via videoconference or telephone, which would moot these petitions. Declaration of Travis Silva
2    [Dkt. 7-2], Ex. G; Respondents' Reply [Dkt. No 34] at 6:23-26. At the hearing, both parties
3    represented that they have not asked AAA whether it would allow them to proceed remotely.

## LEGAL STANDARD

The Federal Arbitration Act (FAA) governs the enforceability and scope of arbitration agreements. 9 U.S.C. §§ 1–307. "[C]ourts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, (2011). The FAA reflects both a "'liberal federal policy favoring arbitration,' and the 'fundamental principle that arbitration is a matter of contract.'" *Concepcion*, 563 U.S. at 339 (first quoting *Moses H. Cone*, *Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); then quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). The FAA also contains a savings clause, which provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The generally applicable contract defenses include fraud, duress, or unconscionability, but not defenses that apply only to arbitration. *Concepcion*, 563 U.S. at 339.

When deciding a motion to compel arbitration, a district court must "treat the facts as they would when ruling on a motion for summary judgment, construing all facts and reasonable inferences that can be drawn from those facts in a light most favorable to the non-moving party." *Shepardson v. Adecco USA, Inc.*, No. 15-cv-05102-EMC, 2016 U.S. Dist. LEXIS 46754, at *6 (N.D. Cal. Apr. 5, 2016) (citing *Chavez v. Bank of Am.*, No. C 10-653 JCS 2011, WL 4712204, at *3 (N.D. Cal. Oct. 7, 2011)). Additionally, courts apply federal substantive law to questions regarding the interpretation and enforceability of arbitration agreements generally, and state contract law to questions concerning whether the parties agreed to arbitrate. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). In order to determine whether a state "common law rule makes an agreement to arbitrate unenforceable, [the Court] must consider both the federal law of arbitration and the state rule at issue." *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1022 (9th Cir. 2016).

**DISCUSSION**

There is no dispute that the parties have a valid arbitration agreement. The parties' agreement contains a broad delegation clause, which states that "any and all disputes" will be resolved exclusively and finally by binding arbitration. The arbitration procedures in the same agreement provide that "any dispute related to [the] interpretation, applicability, or formation" of the agreement is "for the arbitrator to decide." The agreement specifies that the term "dispute" should "be given the broadest possible meaning that will be enforced." The Supreme Court and the Ninth Circuit have endorsed the validity of broad delegation clauses like the one in the parties' agreement. *See, e.g., Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010); *Caremark, LLC v. Chickasaw Nation*, 43 F. 4th 1021, 1029 (9th Cir. 2022). Accordingly, in the first instance this dispute should be resolved by the arbitrator. In this regard, the demands have been filed with AAA in five different states. This means either that SpinX must move to enforce the venue provision in an arbitration in each of those states, so that the arbitrator may determine how to interpret the arbitration agreement, or else it should seek relief in the district courts of those states if it asserts that it is impossible or otherwise improper to proceed with the arbitration.

That said, it is unclear to me that this argument over venue constitutes a real dispute. The parties are willing to proceed by videoconference but they have not checked with AAA to confirm that it will allow such a proceeding. Assuming it does, will it matter where the virtual venue is, or whether the arbitrator is chosen from those listed by AAA in San Francisco? If it does, the Federal Arbitration Act provides that a court can only compel arbitration in its own district. 9 U.S.C. § 4 (emphasis added). And the arbitration demands have been filed in other states. To the extent the parties require a court to compel AAA to act in accordance with their agreement, they should seek such relief from a court that would have jurisdiction over the relevant arbitrator.

But before that happens, I suggest that the parties act reasonably. Pursue a resolution through AAA or through JAMS, and don't bother my colleagues in Massachusetts, Kentucky, Ohio, Georgia, and New Jersey with this matter. That is a suggestion only—I lack authority to compel anything in this case.

**CONCLUSION**

For the foregoing reasons, I **DENY** petitioner's and respondents' cross-petitions to compel arbitration.

**IT IS SO ORDERED.**

Dated: May 31, 2023



William H. Orrick
United States District Judge